ALEXANDER BRIDGES, Respondent, *v.* ST. LOUIS, IRON
MOUNTAIN, AND SOUTHERN RAILROAD COMPANY, Appel-
lant.

January 7, 1879.

1. In an action for damages for injuries caused by a defective wheel of a locomo-
tive, evidence that the defect was open to observation, and that it had
existed for a considerable time, tends to support an allegation of defendant's
knowledge of the defect.

2. A servant does not take extraordinary risks which the master, by the exercise
of reasonable care, could foresee and prevent; and if the master suffers
machinery to become so bad that the hazard is greatly increased, this
increased hazard becomes the risk of the master.

3. The master's obligation to furnish suitable machinery for the servant's use
is not discharged by the employment of an agent or servant charged with
the duty of performing the obligation.

4· That the machinery which caused the injury was open to plaintiff's inspec-
tion, and was so worn as to be more than ordinarily dangerous, will not
necessarily defeat a recovery where it was a matter of skill and judgment
to know how much wear and tear it would stand, and plaintiff was not an
expert in the matter.

5. A voluntary admission of counsel, not called for by the other side, is not
acquiesced in because not denied by opposing counsel at the time.

6. The giving of an erroneous instruction, which it affirmatively appears did
not prejudice the appellant, is not a ground for a reversal.

APPEAL from St. Louis Circuit Court.
*Affirmed.*

THOROUGHMAN & WARREN, for appellant, cited : *Clarke* v.
*Hammerle*, 27 Mo. 55 ; *Sawyer* v. *Railroad Co.*, 37 Mo.
240 ; *Fitzgerald* v. *Haywood*, 50 Mo. 216 ; *Wonder* v.
*Railroad Co.*, 32 Md. 420 ; Whart. on Neg., sects. 119,
214.

A. R. TAYLOR, for respondent : The fact that the plaintiff
knew that the wheel was "badly worn" does not show that
he knew the danger.—*Dale* v. *Railroad Co.*, 63 Mo. 455.
It is a part of the duty of the master to keep himself
acquainted with all the defects of machinery.— *Clark* v.
*Holmes*, 7 Hurl. & N. 937 ; *Railroad Co.* v. *Troesch*, 68 Ill.
545 ; *Weems* v. *Mathieson*, 4 Macq. H. L. Cas. 215 ; Whart.

on Neg. (2d ed.), sect. 210. And the fact that the master delegates his duty to agents does not relieve him, however competent the agent. In such cases, the act of the agent is the act of the master. — *Malone* v. *Hathway*, 64 N. Y. 5 ; Whart. on Neg., sect. 232 b, and cases cited.

HAYDEN, J., delivered the opinion of the court.

This is an action by a fireman who was in the employ of the defendant and upon an engine or tender of one of its trains, to recover damages for an injury suffered by the breaking of one of plaintiff's legs. The petition alleged that the engine and tender were thrown from the track, and the injury caused, by a defect in the wheel of the engine, owing to which the wheel broke ; that the wheel was out of repair, and unsafe ; and that though the defendant was informed of this, it failed to provide a suitable engine and tender. Upon the trial it appeared that the plaintiff was sitting on the seat at the fireman's side of the engine of a passenger-train running upon the defendant's road, when one of the wheels of the engine broke and the engine was thrown from the track. It appeared that this engine had been running, while the plaintiff was upon it as fireman, for at least eighteen months ; that the engineer, whose duty it was to report the engine when not in good repair, was one McWade, and that he and a baggage-man were upon the engine-tender with the plaintiff at the time of the accident, but were neither of them injured. The plaintiff testified that the flange of the left-hand forward wheel of the engine broke, and that this threw the engine off to the left, or on the same side upon which he was sitting, while he, when he was thrown off, struck the ground upon the right-hand side. This flange the plaintiff, in passing around the engine when engaged in his duties, had noticed, and had seen that it was badly worn before the accident. He testified that he did not know what amount of pressure wheels so worn would bear; that he saw nothing upon the day in

question to indicate any greater danger than usual; that he attended to his business, and left the condition of the engine to McWade, whose duty it was to examine and make reports. The jury found for the plaintiff.

The defendant in this case rested upon a demurrer to evidence, and now complains that it should have been sustained. It is said there was no evidence that the defendant was informed there was any defect existing in the wheel which broke, while the petition avers positive knowledge. But this averment of knowledge is the substantive averment of the pleader, and if there were evidential facts tending to support it, this was sufficient. These facts of evidence were shown. The present is not a case of latent or secret defect, but of one which, if it existed, was open to observation. From this fact and the fact that the defect had been suffered to exist for a considerable time, which there was evidence tending to prove, knowledge is fairly inferable. The question was put to the jury whether, upon the evidence, the defendant's agents having charge of the supplying of the machinery and wheels of the engines knew, or could by the exercise of reasonable diligence have known, of the defective condition, etc., and there was evidence tending to show either alternative.

But it is said that if McWade, the engineer who had charge of the engine and who was a fellow-servant in the same employment, was negligent, the plaintiff cannot recover for an injury arising from such negligence. The first answer to this objection is that it was not McWade's negligence in failing to report that caused the injury. The cause of the injury was the failure of the defendant to observe its legal obligation as to keeping suitable appliances. The servant takes the ordinary risks incident to his employment, including the negligent acts of his fellow-workmen in the course of the employment. *Farwell* v. *Railroad Co.*, 4 Metc. 49; *Coombs* v. *Cordage Co.*, 102 Mass. 583. But extraordinary risks which the master, in the exercise

of reasonable care, could foresee and prevent, the employee does not take. It is an obligation of the employer to provide and maintain, within such limits as ordinary care will secure, suitable apparatus. If the master suffers machinery, from wear and tear, or otherwise, to become so bad that the hazard is greatly increased, this increased hazard is not one of the negligent acts of the fellow-workman, for such acts are merely part of the ordinary risks incident to the employment. The increased hazard thus produced is the act of the master, and he thus enhances the risks which the servant agreed to take. He cannot then shift his responsibility by urging that the workman whom he employed was negligent. To hold that the master could do this would be to hold that he was under no obligation in respect to appliances and machinery.

Again, the inference of the master's negligence in such cases as the present does not arise merely from the fact that the servant whose duty it is to report defects does not report them, — for the servant may report them, and yet the master may be negligent and the injury follow, — but may arise from the fact of the continued existence of the defect coupled with the legal obligation upon the master. If the defect in the apparatus is patent and long-continued, the jury may fairly infer knowledge on the part of the master. Here the engineer may possibly have reported the engine, and yet the foreman of the workshop may have suffered it to remain in use while unfit for service. The evidence tends to show that the engineer, in fact, did not report the engine; but if he did not, his failure, so far as it has any bearing on the defendant's liability, was a failure to perform an obligation imposed by law on the defendant, performance of which the plaintiff had a right to require at the latter's hands.

Of the cases cited by the defendant to sustain its position upon this question, that of *Wonder* v. *Railroad Company,* 32 Md. 420, seems to be the only one in point. But, for

the reasons given, we cannot agree to what is said in the last paragraph of the opinion in that case.    The obligation of the master in respect to suitable apparatus is as positive and binding upon him as that in respect to suitable servants ; and performance of the latter cannot relieve the master from the former obligation.    As said in the case of *Laning* v. *Railroad Company*, 49 N. Y. 532, there is not a performance of this duty of the master until there has been placed for the servants' use adequate physical means, or due care used to that end ; and that some general agent clothed with the power and charged with the duty to make performance for the master has not done his duty at all, or has not done it well, neither shows a performance by the master nor excuses the master's non-performance.

It is urged that as the plaintiff knew that the flange of the wheel was much worn, and said nothing about it, but remained in the service upon the engine, knowing too that it was the duty of the engineer to examine and report, the question of the plaintiff's contributive negligence should have been put to the jury in the instruction given for the plaintiff.    There is apparent strength in this position, and the question can only be solved by a careful consideration of the evidence.    The duty of the master as to machinery does not immediately cease when he has once furnished proper appliances.    It is a continuing duty ; otherwise extraordinary risks would , be constantly forced upon the employee.    But those ordinary risks which arise from the wear and tear of reasonably suitable machinery the servant undoubtedly takes.    Here the dilemma to which the plaintiff is reduced is : If the flange was so badly worn as to be extraordinarily dangerous, and you, knowing it, remained without complaint, you took the risk.    If, on the other hand, it was merely worn as any flange of a wheel might be, but not so as to indicate uncommon hazard, this was ordinary wear and tear, and the danger was one incident to the work you undertook.    If the plaintiff in the present

case had had skill in respect to the matter here in question, or if the evidence had shown that he knew of the extraordinary danger, it might have been impossible for him, under the circumstances of this case, to have sustained his position.   It would have been no answer for him to say, as he does, that he was not hired to look after the engine.   The reply is that he was bound to exercise ordinary prudence, and if the machine was so obviously and immediately dangerous as to warn a man of common knowledge and discretion, it is plain that his own negligence contributed to any injury so occurring, and that he must be considered as accepting the risk.   The employee under similar circumstances, in order to retain the employment, may be perfectly willing to take the increased hazard; and if here the danger was immediate, and the plaintiff knew this, he ought not to recover.   But if the flange was so worn as to be more than ordinarily dangerous, yet if it was a matter of skill and judgment to know how much wear and tear it would stand, the plaintiff had a right, within certain limits, to rely on the skill and judgment of the defendant.   *Dale* v. *Railroad Co.*, 63 Mo. 459; *Patterson* v. *Railroad Co.*, 76 Pa. St. 389.

Here the plaintiff's testimony, while it tended to show that the flange was much worn, did not tend to show that the danger from the defect was obvious to an unskilled man; and tended to negative the supposition that the plaintiff knew of the increased danger or knew that the engine should have gone to the shop for repairs.   In respect to the plaintiff's knowledge as to the dangerous condition of the wheel, as in respect to his imprudently jumping from the engine, the hypothesis which the defendant complains was not put to the jury was too remote.   To justify the giving of an instruction, there should be something more than a possible argument, or than a basis for far-fetched inference.   That if the plaintiff fell where he says he did he must have jumped, is a process of reasoning tending to show his testi-

mony is untrue, — not evidence tending to show that he imprudently jumped.

It is claimed that the defendant was surprised by the action of the plaintiff's counsel, and so failed to call witnesses as to a material point which the plaintiff's counsel had virtually admitted upon the trial. It seems that during the trial the plaintiff's counsel asked of a witness, called by him as an expert, the question, " ' What kind of a wheel is that, — as to whether it is chilled?' handing witness piece of wheel, which defendant's counsel admits is part of the wheel used on engine 31." This is a quotation from the record, and is the only part relating to any admission. Upon this, and upon the fact that questions were afterwards put to witnesses in regard to this piece of iron, the defendant contends that the plaintiff's counsel admitted that this piece was part of the wheel of the engine in question, and that the court below committed error in allowing the plaintiff's counsel to dispute, before the jury, the identity of this piece, and to argue that it had not been proved to be a piece of the wheel of engine 31. The record shows no ground for any such position. So far as appears, the defendant's counsel made a voluntary admission, which was uncalled for by the plaintiff's counsel, or by any thing the latter said or did. The silence of the plaintiff's counsel in no way bound him. If the defendant's counsel chose to interrupt while the plaintiff's counsel was reëxamining his witness, and to volunteer the statement that the piece of iron taken up was a piece of the wheel of engine 31, there was no obligation upon the plaintiff's counsel either to admit or deny any such gratuitous assertion.

Criticisms of the instruction given at the request of the plaintiff are made, because the word " supplying " is used, and because the instruction tells the jury that the plaintiff was entitled to " whatever damages he has sustained by reason of said injuries, not exceeding fifteen thousand dollars."

There is no force in the former objection; but as to the latter, this court has held that, in cases of this kind, instructions which leave the measure of damages at the discretion of the jury, not referring them to the evidence, but merely limiting them to the amount claimed by the plaintiff in his petition, are erroneous. *Edmunds* v. *St. Louis R. Co.*, 3 Mo. App. 603. It is plain that such instructions should not be given in actions of this kind, as their effect is to lead the jury to infer that it is in their power and at their discretion to give any amount of damages, provided the sum claimed, which is no test or criterion, is not exceeded. In no question is it of more importance to refer the jury to the evidence in the case and the grounds of recovery, and to give them to understand that they are limited by the evidence, and not merely by what the plaintiff may choose to put into his petition, than in the question of the amount of damages. For this error we should reverse the judgment did it not affirmatively appear that this error in the instruction worked no harm to the defendant. It appears that the jury, in estimating the amount of damages, were guided by the evidence; and upon the supposition that the plaintiff was entitled to a verdict, which, upon instructions so far proper, the jury have found, it certainly cannot be reasonably contended that the amount of damages is other than moderate. The evidence showed that the principal injury of the plaintiff was a compound fracture of the leg, about half an inch below the joint, the position of the fracture being such as to make the injury serious and permanent. The jury found a verdict of $1,500. Under the circumstances, the verdict will not be disturbed. The judgment will be affirmed. All the judges concur.