Fugler v. Bothe.

GEORGINA FUGLER, Respondent, v. GEORGE BOTHE
*et al.*, Appellants.

St. Louis Court of Appeals, December 23, 1890.

1. **Master and Servant:** PLEADING. This was an action against an employer for damages for the death of his employe, which was alleged to have resulted from negligence of the employer in furnishing unsafe and unusual appliances to the employe. *Held*, on motion to make the petition more definite, that the plaintiff was not bound to state in his petition whether the employe was experienced or inexperienced, or whether the master had given him any assurance of the sufficiency of the appliances, or whether the danger to which he was subjected was obvious or hidden.

2. —————: NEGLIGENCE: RELEVANCY OF EVIDENCE. The servant, owing to whose death this action was instituted, was a carpenter. He was engaged in covering the sides of a shaft in a building with boards, and in so doing was required to stand on a gutter projecting about fifteen inches from the side of the shaft. In order to establish that this gutter was not an unsafe appliance for the work, the master offered to show that it was as safe a place to work from as swinging platforms of the same width, used by painters. *Held* that this evidence was properly excluded as irrelevant.

3. —————: UNSAFE APPLIANCES. The facts of the case are considered, and it is *held* that the evidence is sufficient to support a finding by the jury, that said gutter was an unsafe appliance furnished by the master, and that the death of the servant was caused thereby.

4. —————: —————: KNOWLEDGE OF SERVANT. Even though the defectiveness of an appliance furnished by the master is patent and known to the servant, yet, if the danger attending the use of the appliance is of such a character that the appliance can be safely used by the exercise of care, caution and skill, the servant does not assume the risk of such use. And *held* that the facts of the case were such as to support a finding, that the danger or risk of the use of said gutter by the servant was not so apparent, threatening or imminent as to debar a recovery.

5. **Instructions.** An instruction given for the plaintiff authorized a recovery in this case upon the hypothesis that the gutter was " an unsafe place ; " another, given for the defendant, required the

Fugler v. Bothe.

jury to find that the gutter was "not a reasonably safe" place. *Held* that, although the former instruction was subject to criticism, and might, if standing alone, constitute reversible error, the objection to it was cured by the other instruction.

6. **Action for Death of Servant:** INSTRUCTION AS TO MEASURE OF DAMAGES. The instruction in this case, as to the measure of damages, directed the jury to assess the damages at such sum as they might find that the plaintiff, the wife of the servant, had sustained by the death of her husband, not exceeding $5,000, and, in estimating the damages, to consider what they should find to be the value of the support of the wife during the time her husband would have been likely to live; but the instruction did not contain the statutory provision that regard should be had for mitigating or aggravating circumstances. *Held* that the instruction was proper.

*Per Rombauer, P. J., dissenting:*

7. **Master and Servant:** UNSAFE APPLIANCES: KNOWLEDGE OF SERVANT. A master employed a workman to board the sides of a shaft in a building, and required him, while engaged in this work, to stand on a plank, which was from fifteen to seventeen inches wide, and was securely fastened to a gutter projecting for about the same distance from the sides of the shaft. The servant fell from this plank, owing to his having lost his balance, and received injuries, which resulted in his death. *Held* that the workman must have known the danger attending the performance of his work in that manner, and to have assumed the risk thereof, and, hence, that, as a matter of law, his widow was not entitled to recover.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

AFFIRMED ( *and certified to supreme court* ).

*Lubke & Muench*, for appellants.

(1) The trial court should have sustained the motion to make the petition more definite and certain. The general allegations of negligence were good only on demurrer or motion in arrest of judgment. But the matters called for by this motion were essential to give a right of action, and should have been specifically

stated on the request therefor by appellants. R. S. 1879, sec. 2057; Bliss on Code Pl., sec. 425; *Edwards v. Railroad*, 74 Mo. 117. (2) The trial court erred in excluding the evidence to show that by comparison the gutter projection was as safe as the ordinary swinging platform commonly used by carpenters, painters and tinners. The question being one of negligence, this testimony was competent to show appellants did only what other persons are constantly doing under like circumstances. (3) The trial court erred in refusing the instruction that respondent was not entitled to recover. *First.* Because there was no evidence to show that Fugler fell from the gutter projection; or if he did fall that the same was traceable to any act or omission of appellants. *Moore v. Railroad*, 28 Mo. App. 622; *Shertle v. Railroad*, 97 Pa. St. 450. *Second.* Because, under all the evidence and physical facts, the perils, whatever they were, of working on the gutter projection were so obvious that Fugler, being a skilled workman, was bound to take notice of them and assumed their risks as an incident to his trade. *Nolan v. Shickle*, 69 Mo. 336; *McDermott v. Railroad*, 87 Mo. 285; *Steffen v. Mayer*, 96 Mo. 420; *Devanney v. Peper*, 12 Mo. App. 588; *Walters v. Wire Co.*, 14 Mo. App. 592; *Sparks v. Railroad*, 31 Mo. App. 111; *Woerhide v. Foundry Co.*, 32 Mo. App. 367. *Third.* Because the alleged refusal of appellants to allow the erection of scaffolding had no reference to the fourth shaft. That applied to the first shaft, and Fugler waived all objection by going on for weeks and doing the work in the first three shafts without the scaffolding. He worked by the hour; had weeks for reflecting whether he would go on with this work; and as an experienced workman knew as well, if not better than appellants, its dangers. Under these circumstances it is idle to say that Fugler continued at this work because of an implied assurance on the part of appellants that he would be safe in doing so. *Nolan v. Shickle*, 69 Mo. 336; *McDermott v. Railroad*, 87 Mo.

295. *Fourth.* Because under all the evidence the projection was a reasonably safe place. *Devlin v. Railroad*, 87 Mo. 545. (4) The first instruction given for respondent was erroneous. It made appellants liable if the projection was in any degree "an unsafe place" to do this work on. It made appellants insurers. The law is quite the other way; the master is not an insurer, and is bound only to use ordinary care to provide his servant with a reasonably safe appliance and place to work in. *Devlin v. Railroad*, 87 Mo. 552. And this instruction was not cured by the instruction, numbered 5, given for appellants. The latter declared the law correctly. Which of the two instructions did the jury adopt?

*E. P. Johnson*, for respondent.

(1) The motion to make the petition more definite and certain was properly overruled. The matter called for in the first specification is necessarily included in the allegation, that Fugler was assisting as a carpenter, and, if inexperience had been relied on, it must have been alleged; the remaining specifications will be disposed of by the other points herein. However, the petition is good. *Pope v. Railroad*, 99 Mo. 400; *Sullivan v. Railroad*, 97 Mo. 113; *Johnson v. Railroad*, 96 Mo. 340. (2) The evidence by comparison was properly rejected, being mere matter of opinion. Besides appellants got all of the benefit to be derived from it by the testimony of the painter that was admitted. *Hurt v. Railroad*, 94 Mo. 255. (3) The evidence was ample (and moreover direct) to go to the jury to show that Fugler fell from the gutter projection, and that the fall was caused by the negligence of the appellants. *Soeder v. Railroad*, 100 Mo. 673; *Schlereth v. Railroad*, 96 Mo. 514; *Schultz v. Moon*, 33 Mo. App. 340, 341; *Buesching v. Gas Co.*, 73 Mo. 230; *Kelly v. Railroad*, 70 Mo. 607. *Moore v. Railroad*, 28 Mo. App. 622, cited

by appellants is in plain contradiction of the foregoing.
(4) It is presumed that Fugler did know there was
danger and took notice of it, but it was the duty of
appellants to provide him a safe place to work (Bishop
on Non-Contract Law, sec. 683), and a failure to do this,
and keep it so, was continuing negligence. *Parsons v.
Railroad*, 94 Mo. 286, on p. 292. (5) It was not neces-
sary for Fugler either to have protested against working
on the guttering, or to have obtained an assurance of
its safety by appellants (but both were done by acts of
the respective parties, as plainly as words could have
made them), in order that he should be entitled to a
recovery in this case. Fugler's failure to protest or to
receive assurances of safety, or his knowledge of the
danger, or his right to quit the service, would not defeat
a recovery, if the guttering was not so dangerous as to
threaten immediate injury or to be plainly perilous to
life or limb, or if he might have reasonably supposed he
could safely work on the guttering by the use of care
and caution. Outside of the implied protest and assur-
ance, the evidence fully sustains this position on his
part, and the questions were for the jury, and they
passed upon them under correct instructions so far as
given on respondent's motion, or by the court of its own
motion. *Soeder v. Railroad*, 100 Mo. 673, 681 ; *Stephens
v. Railroad*, 96 Mo. 207, 212, 214; *Huhn v. Railroad*, 92
Mo. 440. (6) The first instruction given for respondent
is technically correct and perfect as against appellants,
the word, unsafe, being the antithesis of safe and of
reasonably safe. It threw on the respondent the burden
of proving no contributory negligence on the part of
Fugler, when there was not a scintilla of evidence to
support it, and, with this exception, is precisely such
an instruction, in an almost exactly similar case, includ-
ing details of construction, plats, etc., as was approved
in the case of *Bowen v. Railroad*, 95 Mo. 268, on p. 276 ;
*Johnson v. Railroad*, 96 Mo. 340, p. 348, and *Dowell v.
Guthrie*, 99 Mo. 653, on p. 665. But, if this instruction

had been erroneous, it was cured by instruction, num-
bered 5. *Owens v. Railroad,* 95 Mo. 169; *Dougherty v.
Railroad,* 97 Mo. 647; *Mfg. Co. v. Guggemos,* 98 Mo.
391.

BIGGS, J.—Charles H. Fugler, the plaintiff's
deceased husband, was employed by the defendants in
the construction of a building in the city of St. Louis.
While in this employment, the deceased fell from the
second story of the building to the first floor, thereby
receiving injuries which resulted in his immediate
death.

The petition, after alleging that the deceased was a
carpenter by trade, averred that his death was caused
by the negligence of the defendants by reason of their
failure to provide a safe and proper place for him to
perform the work required of him. The negligence thus
complained of was stated as follows: "That the
defendants were then constructing a light and air shaft
in said building to reach from the second floor thereof
to the top of the same, the dimensions of which were
about eight by eleven feet, in which space no floor had
been laid in said second floor, and it was open, except
a guttering that projected fifteen inches inward all
around from the walls of said shaft; upon which gut-
tering it was necessary for said Charles H. Fugler to
stand and work; that the foreman of defendants in
charge of said building commenced the erection of a
scaffold for the purpose of making a safe and proper
place for said Charles H. Fugler and others to work in
the construction of said shaft, but the defendants,
instead of permitting him to proceed in the erection of
the same, carelessly and negligently and recklessly
refused to permit him to do so, and peremptorily
ordered that the work proceed in the construction of
said shaft without a scaffold; and the said Charles H.
Fugler then proceeded to work on said shaft, and, in
consequence of the aforesaid wrongful act, neglect and

default of the defendants, the said Charles H. Fugler, while so engaged at work, fell from said shaft upon the floor of said building, and his death was caused thereby on said day."

The defendants filed a motion to make this petition more specific and certain. The complaints were, that the petition failed to show whether Fugler was an experienced or inexperienced workman; it failed to show whether or not the danger, to which it was alleged the deceased was exposed, was obvious or hidden; and further it was nowhere averred that the defendants had made Fugler any assurances that it would be safe for him to do his work from the gutter, or that he relied upon such assurances. The court overruled the motion, and the defendants saved their exception by then and there tendering a bill of exceptions.

In their answer the defendants, after making a general denial, averred that the death of Fugler was an accident, or that it happened because of his imprudence, carelessness or thoughtlessness directly contributing thereto. This was denied by the reply. Upon the issues thus made up, the case was submitted to a jury. There was a finding and judgment in the plaintiff's favor for $1,300. From this judgment the defendants have appealed.

The first assignment of error presents for our consideration the action of the court touching the defendants' motion to make the petition more specific and certain. The plaintiff's right of recovery was in no way predicated upon the idea that the deceased was an inexperienced person. The simple averment that he was a carpenter, without more, conveys the idea that he was a workman of ordinary experience and was well acquainted with the usual hazards attending his employment. Nor is the right of recovery, as we understand it, based upon the theory that the deceased was induced to go into a place of danger upon the assurances of his employers that there *was no danger*. The cause of action is for

negligence on the part of the defendants in furnishing unsafe and unusual appliances or means for the performance of the work. If the defect was perfectly obvious, then the presumption of law would be that the deceased assumed the increased risk by entering upon the work, provided the danger was apparent and threatening, and that it was not reasonable to conclude that the work could be performed with safety by the exercise of extra caution. It was sufficient for the plaintiff to aver that the means or appliances furnished Fugler by the defendants were unsafe, and that such defect caused the injury. Under such an averment it was only necessary for plaintiff to introduce evidence tending to prove that the appliances furnished to Fugler were defective or unusual, thereby increasing the ordinary risk attending the work, and that such defect was the proximate cause of the injury. If the defendants relied on the claim that the defect complained of was obvious, and that the danger arising therefrom was of such a character as to raise the presumption that the plaintiff, by undertaking to do the work, assumed the additional or increased risk, then such claim was matter of defense. We, therefore, conclude that the petition was sufficient, and that the court committed no error in overruling the motion.

The next assignment of error has reference to the exclusion of evidence offered by the defendants. The defendants offered to show that the gutter complained of was as safe a place to work on as swinging platforms of the same width used by painters, and as platforms used by carpenters in putting cornices on buildings. We cannot see how this evidence could have enlightened the jury, and it might have had the effect to mislead them. Such platforms are always constructed some distance from the walls of the buildings, and in this way the danger of a workman losing his balance by coming in contact with the wall does not exist. When the projection or platform is constructed against the wall of a building, and it is not wide enough for the workmen to

turn around without coming in contact with the wall, then the danger of falling is materially increased. This is a matter of common knowledge. This shows the inapplicability of the evidence. This kind of evidence could only have been admissible upon the idea that, as swinging platforms of no greater width than the gutter were used without material danger to workmen, this fact was some evidence that the deceased fell from the gutter through his own carelessness or inattention, or that the gutter as constructed was reasonably safe. If this was the purpose or supposed effect of the testimony, we are unable, for the reasons stated, to see its applicability, or relevancy. We will have to rule this assignment against the defendants.

The third assignment challenges the sufficiency of the evidence to authorize a recovery. There are three grounds relied on in support of this assignment : *First.* That the evidence failed to show that Fugler fell from the gutter, or, if he did fall, that the fall was traceable to any act or omission of the defendants. *Second.* That the perils of working in the gutter were so obvious that Fugler was bound to take notice of them, and, that, by undertaking to do the work, he assumed the risk as an incident to his employment. *Third.* That, under the evidence, the gutter was a safe place to perform the work required of Fugler. There is another question which we will also consider in this connection. The court, on motion of the defendants, instructed the jury that, if they found that such work was usually done either from a scaffold or from a gutter, then the finding should be for the defendants. It is now claimed that all the evidence tended to prove this fact; hence, the verdict was against the instruction. The determination of this assignment requires an examination of the evidence.

There were four light and air shafts constructed in the building. These shafts extended from an opening in the floor of the second story to the roof. They were

intended to afford light to the storerooms on the first floor and ventilation for the rooms in the second and third stories. The tops of the shafts were to be left open, and the bottoms were to be covered with glass. In order to protect the premises from rain and snow, a gutter was constructed around the base of each shaft. This gutter projected from the sides of the shaft, and it was fifteen inches wide, and about five or six inches deep. The sides of these shafts were to be covered with flooring. The deceased and another carpenter by the name of Schmidt were required by the defendants to do this work. Before commencing on the first shaft, the deceased and Schmidt, under the orders of the defendants' foreman, began to erect a scaffold from the ground floor to the base of the shaft for the purpose, as Schmidt said, of doing the work assigned to them. One of the defendants forbade the construction of the scaffold, and he told the workmen that they could either do the work by standing on the gutter, or they could quit. Thereupon, the deceased and Schmidt began the work as directed, and they so continued until they finished the work assigned to them on three of the shafts. The deceased was at work on the fourth shaft, and, while standing on the gutter, he fell, head first, to the floor below. Schmidt described the accident as follows: "He (Fugler) stood on this projection of something like seventeen inches. As a matter of course there would be a reduction after the sheathing was on. Now he was in this angle here, and we were right close together, and I was over in that angle there. He was standing in this shape, and had not room to turn in all the way. He had his back towards the studding, stooping down, nailing a piece on top of another, and while he raised up, reaching for another piece of stuff—as a matter of course, while he stooped to nail the butt against the studding, he balanced over, head foremost, and fell from the second story on the first floor. I saw him drop off. I saw him fall off."

The proof showed that Fugler was between seventeen and twenty inches across the shoulders. Schmidt was interrogated further as to the manner in which this kind of work was usually done.

The following question was propounded to the witness by the court: "Q. I ask you how that kind of work is generally done, that you were engaged in at the time Mr. Fugler met with the accident? A. The work we started on, when we should put up a scaffold, is work that is done from a scaffold."

The examination was continued by the plaintiff's attorney: "Q. I will ask you whether a careful man might not have succeeded in doing it (the work), without being injured, without a scaffold; that is, that he might have succeeded in doing it? A. Oh, he might."

On his cross-examination, the witness further testified: "Q. And it is a fact, isn't it, that when there is a projection in the first floor, such as you had, that the carpenters will do the work from the projection sometimes? A. If they are compelled to; yes, sir.

"Q. Have you never seen it done before? A. No, sir.

"Q. Then, how do you know that it is done, usually? A. I done it from a scaffold.

"Q. How do you know then, if you never saw this kind of work done before? A. I never saw it done without a scaffold."

That Fugler fell from the gutter, while engaged in the work assigned to him, there can be no dispute. The jury found that the gutter was an unsafe place to do the work required of him, and that his fall was attributable to this. This finding is questioned by the defendants on the ground that there is no substantial evidence to support either proposition. In this we think they are mistaken. The evidence shows that Fugler was required to work on a projection extending only fifteen inches from the side of the shaft. In order to do the work, he had to use both hands; to stand

with his back or side to the wall, and to reach behind him for the pieces of plank which he was using in boarding up the shaft. The statement of these physical facts is sufficient to show that the danger attending such work was much greater, than it would have been had a scaffold been erected. If a scaffold had been built, it would have stood out from the wall, thereby affording ample room to turn around without coming in contact with anything. It was not the narrowness of the gutter that rendered it dangerous, but the close proximity to the sides of the shaft.

As to the other branch of the finding, it is true that there is no positive evidence as to the direct cause of the fall ; however, there is no evidence that it was caused by the inattention or recklessness of the deceased. In the absence of any such testimony the presumption is that he was in the exercise of ordinary care. *Buesching v. Gaslight Co.*, 73 Mo. 219 ; *Soeder v. Railroad*, 100 Mo. 673 ; *Schlereth v. Railroad*, 96 Mo. 509 ; *Schultz v. Moon*, 33 Mo. App. 329. The strong probabilities are that some portions of the deceased's body came in contact with the side of the shaft, thereby causing him to lose his balance. The physical facts demonstrate this very clearly. He was a large man, and it was not possible for him to turn around in the gutter without striking some portion of his body against the sides of the shaft. That this would likely cause him to lose his balance, is a matter of common knowledge. It is undisputed that he was a man of good habits and perfectly healthy ; therefore, it is not at all probable that his fall was brought about by physical or mental ailments.

But it is urged that, if it be conceded that the projection was unsafe, and that by reason of this Fugler lost his life, yet there can be no recovery, because the defect was obvious, and that, as the deceased continued to work with knowledge of the defect, he assumed the increased risk or hazard attending his employment. On

this branch of the case the court instructed as follows:
"If from the evidence the jury believe that Fugler was
an experienced carpenter at and before the time when
he fell from the projection described by the witnesses ;
that he was employed by defendants by the hour, and
as an experienced workman ; that, before beginning the
work at which Fugler was employed when he fell, the
said Fugler knew that it was hazardous to do such work,
standing on the projection described by the witnesses,
*and that the danger of so doing the work was apparent
and threatening ;* that it was not unusual for builders
to do such work in that way, then, although the jury
may also believe that Fugler was directed by the
defendant Ratermann to do said work from said projec-
tion, the jury must find for defendants, if they also
believe that, when defendant Ratermann made said
requirement, he also gave to Fugler the option of quit-
ting the work entirely."

We think this instruction is substantially correct.
The defendants object to that portion in italics. The
rule is that, even though defects in machinery or other
appliances are patent and known to the servant, yet,
if the danger attending the use of such appliances is of
such a character that the machinery can safely be used
by the exercise of care, caution and skill, the servant
does not, in such a case, assume the risk of such use.
*Conroy v. Iron Works*, 62 Mo. 35 ; *Stoddard v. Railroad*,
65 Mo. 514; *Thorp v. Railroad*, 89 Mo. 650 ; *Devlin v.
Railroad*, 87 Mo. 545 ; *Bridges v. Railroad*, 6 Mo. App.
389 ; *Dale v. Railroad*, 63 Mo. 455 ; *Huhn v. Railroad*,
92 Mo. 440 ; *Stephens v. Railroad*, 96 Mo. 207 ; *Soeder
v. Railroad*, 100 Mo. 673 ; Wood's Master & Servant,
sec. 359.

The earlier decisions in this state held to the doc-
trine that, where the defects in machinery or appliances
were obvious and known to the servant, there arose a
legal presumption that the servant assumed the increased
risk attending the employment. But in the case of

*Conroy v. Iron Works*, 62 Mo. 39, the supreme court modified this rule. Judge WAGNER said : "When the defect is so glaring that, with the utmost care and skill, the danger is still imminent so that none but a reckless man would incur it, then, if the servant will engage in the hazardous undertaking, he must be considered as doing it at his peril. But, if the defective machinery or appliances, though dangerous, are not of such a character that they may not be reasonably used by the exercise of skill and diligence, the servant does not assume the risk."

In the case of *Stoddard v. Railroad*, 65 Mo. 514– 520, the court reaffirmed what had been said in the *Conroy case*. It said : "It is true that the evidence tended to show that plaintiff had knowledge of the spring frog and the lowness of the brake beam of the tender, and that two hands instead of four were undertaking to make up the train. But the question as to whether, with this knowledge, the action of the plaintiff in making up the train was of such a reckless character as to make it such contributory negligence on his part as to deprive him of any remedy for the injury, was a question properly referable to the jury under proper instructions," etc.

The court in *Huhn v. Railroad*, 92 Mo. 440, adhered to the same rule and restated it in a very clear and succinct manner as follows : "It has been several times held by this court that, where the instrumentality with which the servant is required to perform service is so glaringly defective that a man of common prudence would not use it, the master could not be held responsible for damages resulting from it. But, if the servant incurs the risk of machinery, which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonable to suppose that it may be safely used with great care or skill, a different rule applies. In such cases mere knowledge of the defect will not defeat a recovery. Negligence on the part of the servant

in such cases does not necessarily arise from his knowledge of the defect, but it is a question of fact to be determined from such knowledge and the other circumstances in evidence."

In *Stephens v. Railroad*, 96 Mo. 207, we find the same rule laid down. The opinion quotes with approval the following from Thompson on Negligence: "If, therefore, the master orders the servant into a situation of danger, and he obeys and is thereby injured, the law will not deny him a remedy against the master on the ground of contributory negligence, unless the danger was so glaring that no prudent man would have entered into it, even where, like the servant, he was not entirely free to choose." 2 Thompson on Negligence, sec. 975. In the opinion the court said : "There may be cases where the servant is ordered to do a particular act, and the order is so unreasonable, and the act so manifestly dangerous to life and limb, that the court, on the evidence, should declare the servant guilty of negligence in obeying the order of the master, and should direct a nonsuit. The general rule, however, is that the question is one for the jury."

We might quote from other cases, but the foregoing will suffice. The rule to be deduced from them is, that the servant does not assume the risk of attempting to use machinery or appliances furnished by the master, though obviously defective, and their use be attended with increased risk, unless such danger or risk *is apparent, threatening or imminent.*

It may be true that the cases cited, as to their facts, are dissimilar to the present case, but, if the principle of law stated is applicable, it becomes our duty to apply it without question. The rule has become too firmly rooted in the jurisprudence of the state to be questioned by us. That the gutter, upon which Fugler was required to do the work, was an appliance within the meaning of the foregoing decisions we do not think can be fairly called in question. By order of the

defendants it was made to take the place of a scaffold.
That the latter would have been regarded as an appli-
ance no one could question.

But even though the gutter be treated as an appli-
ance, the doctrine announced by the foregoing cases is
not applicable, if all the evidence in the case was to the
effect that the work, which Fugler was required to per-
form, was usually done either from a scaffold or the
gutter.   If such were the condition of the proof, we
would be compelled to hold that the danger assumed by
the plaintiff's husband was the usual risk attending
his employment, because a usual method had been
adopted for its performance, and that, in the absence of
any testimony that the guttering was faulty in its con-
struction, the plaintiff could not recover.   But, as we
have seen, the plaintiff's evidence tended to show that
such work was usually done from a scaffold only, and the
jury under proper instructions, found this to be a fact.
The jury also found that the performance of the work
from the guttering was unusual and extra hazardous,
and they also found that the danger attending the use
of the gutter was the proximate cause of Fugler's death,
and that such danger was not threatening, immediate or
imminent.   It only remains for us to say whether the
performance of the work in the manner required by the
defendants was so manifestly dangerous to life and
limb, that the trial court ought to have directed a non-
suit instead of submitting the issue to the jury.   This
we cannot do.   Schmidt testified that by the exercise
of good care the work might be done by standing on the
gutter, and the fact, that he and Fugler completed three
of the shafts without injury to either, has some ten-
dency to prove that the danger was not imminent or,
threatening.

The plaintiff's instruction made the defendants
liable, if the projection "*was an unsafe place.*"   The
defendants' fifth instruction rendered them liable, if the
jury found that the projection "*was not a reasonably*

*safe*" place. The contention is that the use of the words, "an unsafe place," was prejudicial error; that the words, "not a reasonably safe place," were correct; that the instructions thus given were inconsistent, and they were likely to confuse or mislead the jury. The use of the word, unsafe, in the plaintiff's instruction implied that it was the duty of the defendants to furnish a safe place for Fugler to do his work, and not a place that was absolutely safe as contended by the defendants. This instruction, however, is subject to criticism, and, if it stood by itself, we are inclined to the opinion that it would amount to reversible error, although the supreme court in *Bowen v. Railroad*, 95 Mo. 268, 276, approved an instruction which made use of the words, "unsafe and insecure." However, this particular objection was not made to that instruction. It seems to us if there were no other instructions qualifying the words used, or explaining the obligation of the defendants in this respect, the jury might have concluded that it was the duty of the defendants to furnish a place for Fugler to work that was absolutely safe. Whatever doubt there might have been in the minds of the jurors as to the true meaning of the plaintiff's instruction was removed or explained by the defendant's fifth instruction. This answered the requirements of the law. *Owens v. Railroad*, 95 Mo. 169; *Dougherty v. Railroad*, 97 Mo. 647; *M. Foster Vinegar Mfg. Co. v. Guggemos*, 98 Mo. 391.

The last assignment of error involves the correctness of the court's instruction as to the measure of damages, which reads: "The jury are further instructed that, if they find a verdict for the plaintiff herein, they will assess her damages at such sum as they may believe from the evidence she sustained from the death of her husband, not exceeding the sum of $5,000; and, in estimating the same, they will take into consideration what they may believe from the evidence would have been the value of her support from him from the

time of his death, during the time he would probably have lived and supported her."

The defendants complain that this instruction is erroneous, because it was not qualified as required by section 4427, Revised Statutes, 1889. This section concludes as follows: "And in every such action the jury may give such damages, not exceeding $5,000, as they may deem fair and just with reference to the *necessary injury* resulting from such death, to the surviving parties who may be entitled to sue, and also having regard to the *mitigating* or *aggravating* circumstances attending such wrongful act, neglect or default." The evident intention of the legislature was to confine compensatory damages to the necessary injury to the survivor resulting from the death. The supreme court in the case of *Parsons v. Railroad*, 94 Mo. 286, in construing this statute, decided that whenever the circumstances of a case afforded a safe standard by which compensatory damages could be approximately ascertained, such standard should be given to the jury. The instruction complained of is in harmony with what the court said in the *Parsons case*, and it is so worded as to afford the defendants no ground of complaint. It confines the damages to the necessary injury. As was also decided in the *Parsons case*, this section of the statute also conferred upon the party suing the right to exemplary damages in any case, wherein the circumstances would have authorized such damages at the suit of the deceased, had he survived the injuries. In the case at bar, there was nothing to show that the acts of the defendants were wanton, or wilful; therefore, the court had no right to instruct on any such theory. Even if it was a proper case for exemplary damages, we are at a loss to know how the defendants were prejudiced by such failure. We will have to rule this assignment likewise against the defendants.

Finding no error in the record, the judgment of the circuit court will be affirmed. Judge THOMPSON concurs

in this opinion. Judge ROMBAUER, who dissents, is of the opinion that this decision is contrary to the decisions of the supreme court in case of *Aldridge v. Furnace Co.*, 78 Mo. 558; *Devitt v. Railroad*, 50 Mo. 302, and other cases. It is, therefore, ordered that the cause be certified to the supreme court for final determination, and that, until so determined, all further proceedings therein be stayed.

ROMBAUER, P. J. (*dissenting*).—The main facts of the case are stated in the opinion of my associates. As, however, I have come to the conclusion that the law furnishes no right of recovery on the uncontroverted facts, I shall briefly state them in a slightly different order, so as to more conveniently apply the law to the conceded facts.

The air shaft, in which the accident happened, was one of four, identical in shape. They were eight feet by ten feet in the clear, and ran from the second story of the building to the roof, which was several stories higher. The decedent and another carpenter were engaged in boarding the sides of these shafts. While nailing on the boards, they stood on a plank securely fastened over a gutter, which plank, according to plaintiff's evidence, was from fifteen to seventeen inches wide. This gutter and plank ran along the four sides of the air shaft, leaving an open hole in the center, about sixteen feet deep, between the first and second floors, designed to admit light to the floor below through plate glass, which was to be placed over it when the shaft was completed. The men, in boarding up the shaft, stood on this plank and nailed the boards as far as they could reach; then they built a platform to nail them higher up. There was some evidence on part of the plaintiff that this was the usual way of doing such work, although her witnesses did not agree on that point.

The decedent was an experienced carpenter of mature age. He was not employed for any definite time, but he and others were working on the job at so much an hour for the time actually engaged. The decedent and his mate had worked on this work about four weeks; had completed three of the shafts, and, while boarding the sides of the last shaft, the decedent, who was standing on the plank above mentioned, lost his balance, fell into the open hole, and received injuries resulting in his death.

There is no pretense in the evidence that the defendant was working under different conditions in this shaft than those in which he had worked in the other three; nor that the plank in this shaft was not perfectly sound and firm; nor that his employer had any knowledge, touching the danger of the place, superior to that which he had; nor that the danger, whatever its character, was not perfectly obvious to a man of the most ordinary understanding; nor that it was not glaring, immediate, continuous, and the same all the time. The naked question presented by this case seems to me to be, whether an experienced workman, of mature age, falling from an elevation, is entitled to recover from his employer for injuries sustained on the sole ground that, in the opinion of the jury, the place on which he is required to stand in doing the work is not wide enough. As, according to the simple laws of gravitation, a man can always fall from a higher to a lower place, the question, taking the temper of juries into consideration, is practically narrowed down to the inquiry, whether the law, which requires the master to furnish to the servant a *safe place*, means a place from which the servant cannot fall off. If this is the law, then practically the master becomes an insurer of the servant's safety, as far as the *danger of the place* where the servant is required to work is concerned. This is such a radical departure from the law on that subject, as commonly

understood, that I cannot assent to it, without being convinced by more cogent reasons than I find in the opinion of my associates.

We have recently had occasion, on a careful consideration, to formulate the law applicable to the relative rights and duties of master and servant, when the servant is injured owing to patent and obvious defects in the place where he is required to work. *Flynn v. Bridge Co.*, 42 Mo. App. 529. The general rule on that subject, recognized both in England, and in every state of the American Union, is that, if a workman is employed on a dangerous job, or to work in a service of peril, and if the danger belongs to the work itself, or the service in which he engages, *he will be held to all the risks which belong to either*. But, where there is no danger in the work or service in itself, and the peril grows out of extrinsic causes or circumstances, *which cannot be discovered by the use of ordinary precaution and prudence*, the employer is liable precisely as a third person, if the loss or injury is caused *by his neglect or want of care*. 4 Wait's Act. & Def. 417, and cases cited. To discuss even only a considerable number of the numberless cases in which this proposition, seemingly simple, has been applied to the facts presented by the individual case, would swell this opinion far beyond the legitimate limits of such a paper. I must be content with the simple statement that an extensive reading on this subject has failed to disclose to me a *solitary decision* which would render the master responsible to the servant under the conceded facts of this case.

There seems to be an intimation in the opinion that the law governing the liability of the master to the servant is different in this state from what it is in other jurisdictions. I shall briefly examine the cases cited. The first is *Conroy v. Iron Works*, 62 Mo. 35. In that case the plaintiff was injured by the timbers of a bridge giving way owing to insecure fastenings. It was in evidence that, two days previous to the accident, the

plaintiff had called the attention of the superintendent to the defect, and was told that the proper repairs would be made. The plaintiff was nonsuited in the trial court, and the only point in judgment was, whether he had been properly nonsuited. Judge WAGNER, in an opinion reversing that judgment, said. "The timbers in the present case, though loose and not properly fastened, had been used and were still being used, and the plaintiff might have supposed that, by using care, they would be entirely safe. He had brought their doubtful character to the attention of his superior, and had received a promise that the necessary repairs should be made. He had a right to presume that the master would be mindful of his rights, and would take the proper steps to secure his safety. The court, we think, erred in taking the case from the jury."

In *Stoddard v. Railroad*, 65 Mo. 514, the evidence tended to show that three hands were necessary to do the work of switching; that one became disabled, and the yard-master, who was informed of that fact neglected to put another one in his place; that the engineer, who was given to intoxication and had been drinking the morning of the accident, backed the engine without a signal and in a careless way; that the brake or beam of the engine was lower than was usual and safe; that, as a concurrent result of these facts, the plaintiff, who was a brakeman engaged in making up trains, had his foot caught in a spring frog, and was knocked down by the brake beam and seriously injured. The court decided that these facts furnished substantial evidence enabling the plaintiff to go to the jury, and that he was not debarred from recovery, because he was aware of part of these facts;" this is all that *that* case decides.

In *Thorpe v. Railroad*, 89 Mo. 650, the injury to the plaintiff, a switchman, occurred by the temporary insufficiency of the number of men employed in switching the cars, as in the preceding case. The plaintiff

knew, or had reason to know, the number of the crew. The court (by RAY, J.) said: "We think we ought not to say on the evidence before us as a matter of law that plaintiff waived the discharge of the defendant's duty to him to furnish sufficient help, and that he voluntarily assumed the particular risk or danger that caused his injury, or that the evidence is such as conclusively indicates a state of facts and circumstances that require him to peremptorily abandon and discontinue his said employment."

In *Devlin v. Railroad*, 87 Mo. 545, the judgment, which was in favor of the plaintiff in the trial court, was reversed. The plaintiff was a locomotive engineer and was injured by the engine being thrown from the track by the breaking of a defective rail. One of the questions was, whether he was debarred from recovery, because he knew the general condition of the track ; and the court (by BLACK, J.) held "he was not bound to quit the service, nor did he assume all risks from want of repair, unless the track was so far out of repair to his knowledge, that it would be necessarily dangerous to the mind of a prudent person to run an engine over it."

In *Bridges v. Railroad*, 6 Mo. App. 389, the injury was caused to a fireman, who was on an engine, which, owing to a defective and badly worn flange, was thrown from the track. The evidence conceded that the firemen knew that the flange was worn. A demurrer to the evidence was overruled. The decision rests on the following statement in the opinion of the court (by HAYDEN, J.): "The employe under similar circumstances, in order to retain the employment, may be perfectly willing to take the increased hazard ; and, if here the danger was immediate, and the plaintiff knew this, *he ought not to recover*. But, if the flange was so worn as to be more than ordinarily dangerous, yet if it was a matter of skill and judgment to know how much wear and tear it would stand, the plaintiff had

a right, within certain limits, to rely on the skill and judgment of the defendant."

In *Dale v. Railroad*, 63 Mo. 455, the action was by a fireman for injuries received in consequence of the unsafety of the railroad track. The defendant moved for a nonsuit on the ground, that the plaintiff knew the condition of the track. The proof was that the plaintiff had observed that the track was rough, and inferred that it was a bad track from the bumping of the cars in passing over it. NAPTON, J., who delivered the opinion of the court refusing a nonsuit, said: "It would be a harsh conclusion to say that the plaintiff, who was merely a fireman, would be required to abandon his employment upon a merely speculative apprehension that the defendant had not seen, and would not see, that the road, over which their locomotive and cars passed, was properly and safely constructed. The immediate cause of the accident was a defective joint of the rails of which he could have known nothing as a fireman passing over the road, and which the defendant might have known by the exercise of proper diligence."

In *Huhn v. Railroad*, 92 Mo. 440, the plaintiff, a switchman, was injured owing to a defective blocking of a guard rail. He knew that the guard rail was not blocked. There was a demurrer to the evidence, which was overruled, and the plaintiff recovered judgment. BLACK, J., in delivering the opinion of the court upholding the judgment, said: "It has been several times held by this court that, when the instrumentality with which the servant is required to perform service is so glaringly defective, that a man of common prudence would not use it, the master could not be held responsible for damages resulting from it. But if the servant incurs the risk of machinery, which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonable to suppose that it may be safely used with great care, or skill, a different rule applies.

In such cases mere knowledge of the defect will not defeat a recovery. Negligence on the part of the servant, in such cases, does not necessarily arise from his knowledge of the defect, but is a question of fact, to be determined from such knowledge, and the other circumstances in evidence."

*Stephens v. Railroad,* 96 Mo. 207, was twice before the court. A judgment in favor of the plaintiff was first reversed and the cause remanded, but was upheld on the second appeal. The question here involved did not properly arise on either appeal, the only question being as to whether the master was liable for injuries caused by a negligent order given by his vice-principal to a servant, and whether the dangerous character of the order, which the servant was required to execute *on the instant,* was so obvious as to require him either to refuse obeyance, or execute it at his peril.

In *Soeder v. Railroad,* 100 Mo. 673, a brakeman was thrown from the top of a car and killed, owing to the jumping of the car when passing over a defective rail. The suit was by his widow. There was no positive evidence that the decedent knew of this defect, but the court, speaking through BRACE, J., assumed that his mere continuance in the employment after the knowledge of the defect, on the authority of *Huhn v. Railroad, supra,* was not sufficient to debar him from recovery.

After going over these cases, I am still at a loss to understand how the points decided in either of them furnish any warrant for the conclusion of my associates in this case. It is not the declarations of the law, which may have been made in one or the other, but the application of the propositions stated to the points in judgments, which make the law, when we speak of it as founded on precedents. The great difference between all of these cases and the case at bar is, that here the unavoidable inference arises from the uncontroverted facts that the servant not only knew the defect, if such it may be

called, but also knew the attendant and continuous danger arising from it to him, much better than the master could possibly know it. It was the servant, and not the master, who continually moved on the plank, and knew whether he could safely handle his body on it without losing his balance. The relative safety of the appliance did not depend on circumstances of which the master had control, but on such as were within the exclusive knowledge and control of the servant. The case falls wholly outside of the principle, that the servant had a right to rely on the superior knowledge of the master.

What is meant by a *safe place*, which the master is required to furnish his servant to work in or about, is not the obvious or patent safety or unsafety of the place, because, in the nature of things, many kinds of labor have to be performed under conditions relatively unsafe and often dangerous. What is meant by it will best appear from cases illustrating the proposition. Thus, in *Perry v. Marsh*, 25 Ala. 659, a slave was killed while hired out. The building in which he was employed was in a ruinous condition and fell. It was held that the hirer, who was owner of the building and knew its defects, was responsible. So it was held that the master was liable to a servant who received a gunshot wound while tearing down a fence, the master knowing that the work would be forcibly resisted, and concealing the fact from the servant when he put him to work at it. *Baxter v. Roberts*, 44 Cal. 187. So in *Chicago & Northwestern Ry. Co. v. Jackson*, 55 Ill. 492, it was held that a brakeman was entitled to recovery for injuries received in descending a defective ladder which had some rounds missing, there being no positive evidence that he knew of the defect. A fireman's administrator was held to be entitled to recover for his death, caused by the explosion of a defective boiler, he not knowing of the defect. *Columbus, etc., Ry. Co. v. Arnold*, 31 Ind. 174 ; *Cumberland & Pennsylvania Ry. Co. v. Moran*, 44 Md. 283. So in *Keegan v. Kavanaugh*, 62 Mo. 230, a widow was

held entitled to recover damages for the death of her husband, a hod carrier, who was killed by a falling embankment which was in a crumbling condition and not shored up. The decedent had indicated some reluctance to go below the bank, but did go down on the positive order to do so given by his employer. Judge NAPTON who delivered the opinion said : " *If the risk is such as to be perfectly obvious to the sense of any man, whether servant or master, then the servant assumes the risk.* But if it is a case, where no such obvious risks are incurred, and where it was fair to presume that the employe had been guilty of no negligence, the rule of law as well as common sense and justice is, that the master is responsible for damages, if any ensue."

It may be said that the question, whether the danger was apparent, was in this case submitted to the jury in an instruction of the court. But how can a question be submitted to the jury for their finding, concerning which there can be no possible controversy ? The instruction says apparent and *threatening,* as if the court considered that a danger perfectly apparent was not enough, but that it must also be *threatening,* whatever that may mean in this connection. It is a matter of daily experience, of which many courts have even taken judicial notice, that the submission of a case of this class to the jury always leads to the same result. To relieve the distress of *others* is a commendable impulse which juries are but too apt to follow, although they must necessarily do it at the expense of others. They are apt to forget that judicial charity under the guise of law, and at the expense of others, is but an act of licensed oppression.

I am of opinion that the decision in this case is directly opposed to the decision of the supreme court in *Aldridge v. Furnace Co.,* 78 Mo. 559 ; to *Devitt v. Railroad,* 50 Mo. 302, and other cases. The question involved is of the greatest importance to men engaged in mechanical and industrial pursuits, and the case should be certified to the supreme court for final determination.