STODDARD v. ST. LOUIS, KANSAS CITY & NORTHERN RAILWAY COMPANY, APPELLANT.

1. **Instruction:** JURY THE JUDGES OF EVIDENCE. If the petition states a cause of action, and there is any evidence offered in support of the allegations made in it, and controverted by the answer, the trial court commits no error in refusing to take the case from the jury by instructions.

2. **Case Adjudged:** RAILROAD : MASTER AND SERVANT : VICE-PRINCIPAL : CONTRIBUTORY NEGLIGENCE. The petition stated, in substance, that plaintiff, a yard-man in the employ of defendant, a railroad company, without fault on his own part, received an injury while engaged in the performance of his duty in uncoupling a train of cars ; that defendant failed to furnish a sufficient force of men for the work ; that at the switching place where plaintiff was injured, defendant had provided a frog of an unnecessarily dangerous construction, in which plaintiff's foot was caught, so that he could

not extricate it before he was run over by the locomotive; that the yard-master and the engineer, who were working with plaintiff, were unskillful and incompetent, as defendant well knew, but plaintiff did not know, and that the engineer moved the train carelessly, by reason of all of which the plaintiff was injured. Plaintiff's evidence offered at the trial, tended to prove that it required the services of four persons, including plaintiff and defendant's yard-master to uncouple and switch a train with safety and dispatch; that an hour before plaintiff received the injury, the yard-master, whose duty it was to employ and discharge hands, was notified that one of the regular hands was sick and unable to work, but provided no substitute for him; that it became necessary to make up a train, and for this purpose to uncouple and switch cars; that in the absence of the yard-master, plaintiff and one other man undertook to do the work; in the course of which it became necessary that plaintiff should go between the car and tender, and while so engaged, his foot was caught in the frog, and forced down into it by the break beam of the tender; that the frog was an unusually dangerous one, and the brake beam was unusually low and unsafe; that the engineer had been drinking that morning; that he was given to drunkenness, and defendant knew it; that he backed the train recklessly and without waiting for a signal from plaintiff, and that defendant had to do the work of the absent man in addition to his own. The evidence also tended to show that plaintiff knew the dangerous character of the frog, the lowness of the brake beam, and that an insufficient force was engaged in making up the train. *Held*, 1st, That the court committed no error in refusing to instruct the jury that upon the pleadings and proofs the plaintiff could not recover; 2nd. That the neglect of the yard-master to provide a substitute for the absent man, was the negligence of the company; 3d. That though plaintiff knew that defendant's brake beam and frog were dangerous and the force of hands was insufficient, yet it was for the jury, under proper intructions, to say whether they were so glaringly defective and insufficient, that a man of common prudence or sense would not have undertaken the work, in which case plaintiff would have been guilty of contributory negligence, or whether he could under the circumstances reasonably suppose that by the use of great caution and skill he could do the work with safety.

*Appeal from Jackson Circuit Court.*—Hon. SAMUEL L. SAWYER, Judge.

*Wagner, Dyer & Emmons* with *W. H. Blodgett*, for appellants.

It is true that it is the duty of the master to be careful in the selection of his servants, and to provide safe and suitable machinery; but the proposition is undeniable that the master will be exempt from responsibility in all cases where the risks were apparent, and were voluntarily assumed by a person capable of understanding and appreciating them. *Smith v. Union R. R. Co.* 61 Mo. 588; *Keegan v. Kavanaugh*, 62 Mo. 230; *Hayden v. Smithville Manufacturing Co.* 29 Conn. 548–558; *Wonder v. B. & O. R. R. Co.* 32 Md. 411; *Williams v. Clough*, 3 Hurlst. & Norm. 258.

*J. Brumback*, for respondent.

There was nothing like a failure of proof by plaintiff. Knowledge of want of force, or of the place, or of the machinery and apparatus, may not be knowledge of all the risks. It is the last kind of knowledge that is a material element in negligence.

Even if the evidence, in the judgment of sensible men, might lead to different conclusions as to whether they establish want of care or contributory negligence, the jury must decide. (*Norton v. Itner*, 56 Mo. 352).

A large amount of work had to be done regularly in the yard each day by certain hours. The proper agent of the road, and so the road, had due notice of a hand being short, before Stoddard went to work. (53 N. Y. R. 551; *McGowan v. St. L. & I. R. R. Co.* 61 M. R. 352.) Stoddard knew that the particular train had to be switched and made up by a certain hour; he had never tried before to handle such a train with the assistance of one man; he had no actual knowledge of what he and another man could do in the time limited. How could he know that under the circumstances he and the other man could not safely undertake to do the work in the time? He alone could have done all the work by taking time enough, more time than was allowed. There is nothing to show that he was so negligent as to preclude a recovery. At least, that ques-

tion was for the jurors, who had their attention very distinctly called to what would preclude a recovery in such case on account of want of sufficient force.   Authorities as to instructions given: *Lewis v. St. L. & I. M. R. R. Co.* 59 Mo. 501; *Porter v. H. & St. J. R. R. Co.* 60 Mo. 162; *Gibson v. Pacific R. R.* 46 Mo. 163.

NORTON, J.—This suit was instituted in the circuit court of Jackson county by plaintiff, who was an employee of defendant, and whose business as such was to assist in making up trains at the yard of defendant, in Kansas City, for the recovery of damages sustained by him while in defendant's service.   It is substantially alleged in the petition, that plaintiff was employed by defendant to assist in making up its trains, and that while so engaged in uncoupling a car from the tender and locomotive of defendant, the right foot of plaintiff was caught and fastened in what is known as a spring frog, so that he could not get out of the way of the moving tender which forced him down on the ground and ran on to and crushed his right foot and leg; that the injury was not occasioned by any negligence of plaintiff, but by the failure of defendant to furnish, in conjunction with plaintiff, a sufficient number of other laborers to carry on the businesss of making up its trains without unnecessary danger to plaintiff, there not being at the time of the injury any one on the car to set the brake of the car and draw the coupling-pin.   The petition also charged, that at the place where he received the injury, defendant had provided a spring frog at the place for switching cars instead of a frog acting on a different and less dangerous principle, and that the same was unnecessarily unsafe for, and dangerous to plaintiff, while employed in switching cars.   It also charged that the yard-master and engineer working in conjunction with plaintiff, did not possess ordinary skill and capacity in the business entrusted to them and were unreliable and incompetent, which defendant well knew and plaintiff did not know, and that the engineer did

not move the locomotive and tender in a careful way, by reason of which he was injured. The allegations as to negligence of defendant in not furnishing the requisite number of laborers, competent and skillful yard-master and engineer, and machinery fit, suitable and safe for the purpose for which it was used, were denied by answer. The cause was tried by a jury and a verdict and judgment for $5,000 was rendered for plaintiff, from which defendant, after making ineffectual motion for a new trial, has appealed. After the plaintiff had closed his evidence in support of his petition, defendant moved the court to instruct the jury that upon the pleadings and evidence, plaintiff could not recover, which was by the court overruled. The refusal of the court to give this instruction is the chief error relied upon by defendant for a reversal of the judgment, it being conceded by counsel for defendant, that the instructions taken together are not sufficiently objectionable to reverse the judgment, provided they are applicable to the evidence. The sole question, therefore, to be considered by us is as to the action of the court in refusing to instruct the jury to find for defendant after the close of plaintiff's evidence. The petition unquestionably states a cause of action, and if there was any evidence in support of it, the trial court committed no error in refusing to take the case from the jury.

The question raised here is not that the evidence is *insufficient*, but that there was *no evidence* which authorized the court to submit the case to the jury.

1. INSTRUCTION; jury the judges of evidence.

The evidence tended to show that it required in making up trains the services of the yard-master and three other persons in conjunction with him to do the work with safety and dispatch; that on the morning of the day on which plaintiff was injured, the yard-master of defendant, whose duty it was to employ and discharge laborers engaged in and about making up trains, was notified that one of the hands was sick and unable to work; that about an hour after this information was given it became necessary to make up one of defendant's trains, and

that plaintiff and one other hand undertook to make up the train without the assistance of the yard-master, who was not present at the time, and who had not provided another hand to take the place of the one disabled by sickness; that after the switch was thrown open by plaintiff, so that the passenger car would pass down to its place on the main track, it became necessary to uncouple a car from the engine and tender, and in order to do so plaintiff was compelled to step between the car and tender, and that while so engaged, his foot was caught in a spring frog and was knocked down into the same by the brake beam of the tender; that the spring frog was more dangerous than the frogs commonly used at switching places; that the brake beam of the tender was lower than was usual or safe; that the engineer engaged in moving the train had been drinking that morning, was given to drunkenness, and had been for that cause suspended at one time by defendant; that the engineer backed the locomotive without a signal from plaintiff for that purpose, and that he ran the same, recklessly and carelessly. The plaintiff testified that the engineer in backing the engine, ran it at the rate of six miles an hour; that one man usually did the switching and another rode on the platform of the car to manage the brakes and uncouple the cars; that in making up this train he had to perform the labor of switching and uncoupling cars; that he could not get on the platform of the car and uncouple the same in time to get down and change the switch after the car passed, so as to let the engine pass on to its proper track, and that no one was supplied in place of the employee, who had been reported to the yard-master as unfit for duty, because of his sickness.

It is too well settled to require the citation of authorities to establish the proposition that there was an implied contract between the plaintiff and defendant, that defendant would use due care in employing only those who are reasonably fit and competent for the performance of their respective duties, and that it was the duty of defendant to

employ a reasonable and sufficient number of persons to manage its cars and trains with safety. *Harper v. Ind. & St. Louis R. R.* 47 Mo. 579; *McKeon v. Citizens' Railway* 43 Mo. 406.

The evidence in this case tended to show that three hands, in conjunction with the yard-master, were necessary to do the work of switching and making up trains; that the yard-master, who was charged with the duty of employing and discharging hands for this purpose, after being informed that one of the hands employed for the purpose of assisting in making up defendant's trains, was unable to work, neglected to employ and furnish a hand to take his place. The negligence of the yard-master to perform this duty was the negligence of defendant, and renders them liable for any injury.

In case of *Brothers v. Cartter* 52 Mo. 372, it was held that when a master delegates to a superintendent, the power to employ and discharge servants which duly adheres to him as master, he thereby makes himself liable for any injuries sustained by his servant, caused by the lack of care or negligence of such superintendent. This evidence in connection with that showing that the spring frog used by defendant was more dangerous than the frogs commonly used, that the brake beam of the tender was lower than was usual or safe, that the engineer in charge of the engine was given to intoxication, and had been drinking the morning that defendant received the injury, and that he backed his engine without a signal given him for that purpose, in a careless way, justified the trial court in refusing to take the case from the jury by giving the instruction asked for by defendant. It is true that the evidence tended to show that plaintiff had knowledge of the spring frog, and the lowness of the brake beam of the tender, and that two hands instead of four were undertaking to make up the train. But the question as to whether with this knowledge the action of the plaintiff, in making up the train, was of such a reckless character as to make it such contributory negligence on his

part as to deprive him of any remedy for the injury, was a question properly referable to the jury under proper instructions, especially when there was no evidence tending to show that plaintiff knew that the engineer in charge of the engine was given to intoxication, and had for that cause been previously suspended. In the case of *Conroy v. Vulcan Iron Works*, 62 Mo. 39, it was held that when the instrumentality with which the servant is required, to perform service, is so glaringly defective that a man of common prudence or sense would not use it, the master could not be held responsible for damages resulting from it. In such a case the servant would be guilty of heedlessly and recklessly exposing himself to danger, and would have to abide the consequences. But when the servant incurs the risk of machinery, which, though dangerous, is not so much so as to threaten immediate injury, or when it is reasonable to suppose that it may be safely used with great caution or skill, a different rule prevails. To the same effect is the case of *Keegan v. Kavanaugh*, 62 Mo., 232. It was also held in the case of *Smith v. Union R. R. Co.*, 61 Mo., 591, that the question of contributory negligence is one of fact, and is usually left to the jury under suitable instructions. As it seems to be conceded by counsel that the instructions given in this case enunciated the true rule governing this question, we perceive no reason for interfering with the judgment which is therefore, with the concurrence of the other judges, affirmed.

AFFIRMED.