# DANIEL HESTER, Respondent, v. JACOB DOLD PACKING COMPANY, Appellant.

### Kansas City Court of Appeals, March 3, 1902.

1. **Master and Servant**: ASSUMPTION OF RISK: EXTRINSIC DANGER: DIFFERENT RULES: JURY QUESTION. Where the danger is inherent in the work itself, the master assumes the risk; but if it grows out of extrinsic causes the master is liable if injury arises by his negligence; and continuing work with knowledge of defects in appliances is not per se negligence, but the jury may determine the negligence from such knowledge and other circumstances in evidence.

2. ———: KNOWLEDGE OF SERVANT: CONTRIBUTORY NEGLIGENCE: JURY QUESTION. The fact that an experienced carpenter is expert in safety of scaffolds and knows that a plank therein is painted and had nail holes in it and was not safe for scaffolding, will not in itself warrant an instruction directing a verdict for the defendant, but such questions may go to the jury to determine, from all the facts and circumstances, whether he was guilty of contributory negligence in using the scaffold.

3 ———: NEGLIGENCE: SCIENTER: SERVANT'S CARE. Defendant was informed that the scaffold in question was dangerous, and he should have made it reasonably safe; and instructions requiring in effect the highest degree of care of the plaintiff were properly refused.

4. **Evidence**: OPINION: FACT. A question to a witness called for an opinion. The answer was in the affirmative, but added a matter of fact. *Held*, the answer cured the defect and removed the misleading character of the question.

### ON MOTION FOR REHEARING.

5. **Master and Servant**: SAFE APPLIANCES: PRESUMPTION: CONTRIBUTORY NEGLIGENCE: INSTRUCTION. A servant may assume that the master has furnished a reasonably safe place for him to work, with the exercise of reasonable care, until the defects in the place or the appliances become so obviously dangerous as to deter an ordinarily prudent man from continuing in the work; and where the

evidence tended to show that the defect was not so glaring on the one hand and that it was so on the other, an instruction submitting both theories to the jury is proper.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore* for appellant.

(1)   Under the testimony of the plaintiff himself, the court should have directed a verdict for the defendant.  Nolan v. Shickle, 69 Mo. 336; Bohn v. Railroad, 106 Mo. 429; Shea v. Railroad, 76 Mo. App. 29; Fugler v. Bothe, 117 Mo. 475; Thomas v. Railroad, 109 Mo. 187; Berning v. Medart, 56 Mo. App. 443; Aldridge v. Furnace, 78 Mo. 559; Watson v. Coal Co., 52 Mo. App. 367; Junior v. Power Co., 127 Mo. 79; Steinhauser v. Spraul, 127 Mo. 541; Marshall v. Hay & Press Co., 69 Mo. App, 256; Holloran v. Iron Foundry Co., 133 Mo. 470; Jackson v. Railroad, 104 Mo. 448; McCarty v. Rood Hotel Co., 144 Mo. 397; Hulett v. Railroad, 67 Mo. 239.   (2)   The court erred in refusing to give instruction number 3, requested by defendant.   Fugler v. Bothe, 117 Mo. 475; Nolan v. Shickle, 69 Mo. 336; Bohn v. Railroad, 106 Mo. 429; Shea v. Railroad, 76 Mo. App. 29; Junior v. Power Co., 127 Mo. 79; Railroad v. Love, 10 Ind. 554; Showalter v. Fairbanks, 60 N. W. 257; Epperson v. Postal Co., 50 S. W. 806.   (3)   The court erred in refusing instructions numbers 6 and 7, requested by the defendant.   Moore v. Railroad, 146 Mo. 572; Hurst v. Railroad, 63 S. W. 695; Hulett v. Railroad, 67 Mo. 239.   (4)   The court erred in giving instruction numbered 2, at the request of plaintiff. Lynch v. Railroad, 112 Mo. 420; Brannock v. Elmore, 114 Mo. 55; Wolf v. Ins. Co., 86 Mo. App. 580; Thompson v. Irwin, 76 Mo. App. 418.   (5)   The court erred

in permitting witness Roberts to state that the condition of the scaffolding boards would have been disclosed by a careful examination. Gatridge v. Railroad, 94 Mo. 468; Hoffman v. Railroad, 51 Mo. App. 273; Madden v. Railroad, 50 Mo. App. 666; Gavisk v. Railroad, 49 Mo. 274.

*Hollis & Fidler* for respondent.

(1)   The testimony of the plaintiff is in effect the same as on the former appeal, and the court should be guided by its former opinion, which is the law of this case.   (2)   There was no evidence to support defendant's refused instruction number 3.   All the testimony was that plaintiff knew nothing about and did not examine the board by which he claims he was injured.   The plaintiff's testimony showed he knew nothing about it and the defendant offered no testimony on the subject. (3)   Defendant's refused instructions 6 and 7 were manifestly not the law and were properly refused. All the testimony is that the plaintiff thought he was perfectly safe in walking on the plank.   The plaintiff was not bound to walk the ties when the road was planked. The plank road was an invitation to use it.   Lynch v. Railroad, 112 Mo. 420.   (4)   The question asked witness Roberts, and the answer thereto when fully stated, are perfectly proper.      Hoffman v. Railroad, 51 Mo. App. 273; Madden v. Railroad, 50 Mo. App. 666; Gutridge v. Railroad, 94 Mo. 468; Gavisk v. Railroad, 49 Mo. 274.

BROADDUS, J.—This case was in this court once before on appeal, and will be found reported in 84 Mo. App. 451.

The plaintiff is a carpenter, and the defendant corporation is engaged in the business of killing and packing meats in Jackson county, this State.   On about the third day of July, 1898, the defendant was engaged

in erecting an ice plant on its premises, and that while so engaged it became necessary to have scaffolding for the use of plaintiff and other workmen who were the employees of defendant in constructing said plant. This ice plant under construction consisted of two tanks, each about thirty-five feet wide, by seventy feet long and four feet deep. ''The framework (called lattice-work by witnesses) was being put on one of these tanks, and not being strong enough to support the weight of a man, planks were laid across for the use of the workmen in getting about. The boards (of the scaffolding) were supported at about every fifteen or twenty inches. Plaintiff was walking on one of these boards, in going after one of his tools, when it broke, letting his leg into the tank, injuring it. There was evidence tending to show that all the lumber furnished by the defendant was new, good and sufficient for the purpose intended. There was also evidence to show that the plank which broke with plaintiff was painted and had nail holes in it, indicating that it had been used before.

Much of this statement is taken from the opinion of Judge ELLISON in the case as reported. The case was reversed for error of the trial court in giving a certain instruction for the plaintiff, and remanded for a new trial. The plaintiff's instructions, herein, seem to have been framed so as to comply with the opinion of the court rendered as aforesaid, therefore, the plaintiff contends that the case is *res adjudicata* and should be affirmed. On the contrary, the defendant contends that under the evidence the status of the case has materially changed, and that it should be reversed, because the instructions do not meet the issue under the changed conditions, and because the court committed error in refusing to give to the jury certain instructions asked by the defendant.

The defendant's claim is, that on the second trial the plaintiff's own testimony showed that he knew of

the defects of the board that broke under him and caused his injury, as well as it was possible for the defendant's foreman in charge to know. As the first bill of exceptions containing his evidence is not before us, we do not know what his evidence in detail was. But judging from a statement in the opinion referred to, that the "plaintiff testified that he did not notice the defects," we will presume that such was the purport of his testimony. It is therefore to be ascertained from an examination of the record before us, whether, at the time of the injury, the plaintiff was aware of the defects of said board, or that he possessed as much knowledge in that respect as it was possible for defendant's foreman to have. We will give some of his testimony in answer to questions propounded to him.

"Q. Now you say you have been a carpenter for some thirty years? A. Yes, sir. Q. Have you ever helped to build houses? A. Yes, sir, lots of them. Q. In the course of building houses, Mr. Hester, did you ever see any scaffolding? A. Yes, sir, lots of them. Q. So, as a matter of fact, you have been working around and on scaffolding for some thirty years? A. Yes, sir. Q. You have put up scaffolding yourself have you? A. Yes, sir. Q. Hundreds and perhaps thousands of times? A. I expect a hundred times. I have built lots of scaffolding in my life. Q. So that you know as much about the strength of boards and scaffolding as any man could of your thirty years' experience? A. Well, I think I know when a board will hold a man up. Q. And you see whether it is a new board or an old board? A. Yes, sir; I never use old boards in scaffolding. Q. Take a case of scaffolding built by somebody else, where you have to go, you always examine them? A. Most assuredly, anybody would. [After stating that his weight was about 230 pounds, the following questions were put to him]: Q. And so before you trust your weight upon a scaffolding it has been your practice for years and years to exam-

ine to see if it will hold you up? A. Yes, where a scaffold is built. Q. As a matter of fact, do you know of anybody that has more experience and more likely to know about the strength of boards than you have? A. No, I don't know that I do. Q. And that is the result of your thirty years' experience? A. Yes, sir. Q. And these boards you say that you had to walk on there were not only old boards, but they were painted boards? A. Yes, sir. Q. And had nail holes in them? A. Yes, sir; had been nailed up on a building somewhere, I couldn't say where. Q. So of course you noticed that when you first went to work, did you not, when you first had gone to use them? A. Well, yes. Q. Anybody who walked on them as you did, couldn't help but notice that they were old boards and that they were painted and had these nail holes in them? A. Yes. Q. But if these boards had been weakened, why, you knew from your thirty years' experience what the danger would be in walking over them didn't you? A. Well, yes. Q. And from your experience you knew that as well as any one else, didn't you? A. Well, yes, as I said before, I think I know when a scaffold is safe. Q. Now when was it you made the first inspection, when you first went to work? A. Why, when the boards was put in. Q. And just from force of habit, as an old carpenter, when you were called on to work on this work, why, you would examine them and inspect them as you had occasion to use them? A. Why, most assuredly. Q. And based your judgment on that, as to whether they were sound and sufficient to hold your weight? A. Yes."

This evidence, in short, is that he was a carpenter of thirty years' experience, and skilled in his craft; that his experience in building scaffolding was great, and his knowledge as to their stability and safety equal to that of any one; that he never went upon one without inspecting it in order to ascertain its safety; that he knew the material of which the one in question was

constructed, inspected it before he got on it, and inspected the boards from time to time as he used them. With all this knowledge he testified that he did not know that scaffolding was unsafe. It is shown by the evidence of J. W. Roberts, that the plank that broke under the weight of plaintiff was unsound; that it was a rotten board, and painted on one side. He says that he noticed the character of the boards at the beginning, when the scaffold was started, and that he notified the foreman of its insufficiency. Notwithstanding the plaintiff may have been the most skillful of his craft, and had exercised all his skill and caution (which it seems he did) to ascertain whether there were defects in the scaffolding and failed to detect any, yet if the defendant's foreman had actual knowledge of its insecurity, would the defendant be liable? The witness, Roberts, says that he gave him notice of the insecurity of the scaffold, which, if true, imposed upon the defendant the duty to make it reasonably safe. The defendant insists that if the plaintiff's knowledge and skill were of the highest quality, which is not to be denied, and that he exercised the utmost caution and failed to discover any defects in the scaffolding, then the defendant is not liable, because the defendant's foreman could have done no more. We have given much of the plaintiff's evidence in detail, to show the difference, if any, there is in the case as now before us, from what it was when it was here as reported.

The defendant, with the view of meeting the supposed change in the facts of the case, asked the court to instruct the jury as follows:

"If the jury believe from the evidence, that the plaintiff, Hester, was a carpenter of thirty years' experience, and thoroughly familiar with scaffolding and boards used for scaffolding, including the one by which he claims he was injured, and that Hester knew as much about the strength of said boards, and the danger to be apprehended therefrom as the defendant could or

should have ·known by the exercise of ordinary care,. then your verdict will be for the defendant, even though ·you should believe that Hester stepped upon a scaffolding plank and the plank broke under him causing the injury sued for.''

The defendant contends that said instruction is in harmony and supported by the rule of law announced by Judge ROMBAUER and approved by the Supreme Court in Fugler v. Bothe, 117 Mo. 475. The rule of law thus stated was applied to a state of facts where the employee was injured owing to the obvious danger of the employment itself. The general rule applicable to such cases, is stated as follows: ''If a workman is employed on a dangerous job, or to work in a service of peril, and if the danger belongs to the work itself, or the service in which he is engaged, he will be held to all the risks which belong to either.'' In Price v. Railroad, 77 Mo. 508, a case where a servant of the company accepted employment knowing as well as his employer the *perils* attending such employment, it was held that he assumed the risk incident to the danger of the service. See also. Thomas v. Railroad, 109 Mo,. 187. In all this class of cases the facts show that the employees knew of the peril—the danger being obvious to a person of ordinary caution and prudence.

But there is another general rule recognized by the courts of this State as applicable to another and different state of facts, viz.: Where there is no danger in the work, or the service itself, and the peril grows out of extrinsic causes, which can not be discovered by ordinary caution or prudence, the employer is liable precisely as a third person, if the loss or injury is caused by his neglect or want of care.'' Beard v. Am. Car. Co., 63 Mo. App. 382; Hamilton v. Mining Co., 108 Mo. 364; Stephens v. Railroad, 96 Mo. 207. And it is also held that the ''mere knowledge by the servant that an appliance is defective, that risk is incurred in its use, will not, as a matter of law, defeat the servant's

action for an injury received in using it when the danger is not such as to threaten immediate injury, or when it is reasonable to suppose that the appliance may be safely used by the exercise of care and caution. Hamilton v. Mining Co., supra; and the following cases were cited in support of the opinion in that case. Stoddard v. Railroad, 65 Mo. 514; Devlin v. Railroad, 87 Mo. 545.

And negligence on the part of the servant does not necessarily arise from a knowledge of the defects of the appliances he may be using, "but it is a question of fact to be determined from such knowledge and other circumstances in evidence." Huhn v. Railroad, 92 Mo. 440; Devlin v. Railroad, supra; Thorpe v. Railroad, 89 Mo. 650; Dale v. Railroad, 63 Mo. 455; Soeder v. Railroad, 100 Mo. 673. Having the distinction thus made clear between cases where the peril to the employee is incident to the employment and obvious, and in cases where the danger from defective appliances, however, obvious, are yet of such a character that it may be reasonably supposed that they may be used in safety by the exercise of care and caution, we are prepared to pass upon the correctness of said instruction as applicable to the facts of this case.

In the first place, the plaintiff testified that he knew that some of the boards in the scaffold were old boards and had nail holes in them; that old boards, such as they were, were not safe for scaffolding boards; and that one of these boards broke under his weight causing him to fall, whereby he was injured. Assuming also that this was all that the defendant knew, or could possibly know by the exercise of ordinary care, still we do not think the instruction should have been given, for the reason that the defects were not of such a character as would, as a matter of law, preclude the reasonable supposition that the scaffold might not be used with safety by the exercise of ordinary care and caution. The jury were not to be told upon these facts,

as a matter of law, that the plaintiff could not recover. It was for the jury to determine from the nature of the defects in the scaffolding, in connection with all the other circumstances, whether the plaintiff was guilty of negligence in using the defective appliance.

There was evidence tending to show that the defendant's foreman's attention had been called to the insecurity of the scaffolding; if such was the case, it became defendant's duty to remedy the defects so as to render it reasonably safe. It follows, therefore, that the defendant's instruction No. 1, in the nature of a demurrer to plaintiff's case, was properly refused. Instruction No. 4 being in conflict with the law, as held in this opinion, was also properly refused. Numbers 5, 6 and 7 required of the plaintiff, in the performance of his duties, in effect, the highest degree of care and were consequently properly refused by the court.

The defendant assigns as error the action of the court in overruling its objection to the following answer to a question put to witness Roberts: "Q. Now state when you came to inspect it [referring to a board in the scaffold] whether, if it had been examined carefully, the danger could have been found easily? A. Why, certainly, yes; the place where Mr. Hester broke through was rotten." The question propounded was calculated to elicit a conclusion, and did so in part, but the latter half of the answer, to the effect that the place where plaintiff broke through was rotten, was a statement of fact, and practically annulled the vice of that which preceded it. The jury could not, taking the answer as a whole, have been misled.

There is nothing in this opinion in conflict with the expression of Judge ELLISON in the former opinion of this court, but entirely in harmony with what was there said: We quote from that opinion, viz.: "The remarks of Judge ROMBAUER in Fugler v. Bothe, 117 Mo. 500, are not applicable. There the nature of the work and the place were such that the servant knew the de-

fect and danger much better than the master could possibly know it.'' The reference in this opinion to that class of cases and the one under consideration will fully explain the application intended by the special reference of Judge ELLISON to that case.

We find that the cause was tried without material errors. Affirmed. All concur.

### ON MOTION FOR REHEARING.

BROADDUS, J.—The trial court, by instruction numbered two, informed the jury that plaintiff had a right to assume that defendant had furnished lumber of a quality to make the use of it by plaintiff reasonably safe, unless it was so glaringly and obviously dangerous that a man of ordinary prudence would refuse to walk upon it. Defendant asks a rehearing on account of our not having considered that instruction.

Defendant's position is based upon what it conceives to be the testimony of plaintiff himself; it being contended that he knew the lumber was unfit. And that presumptions or assumptions should be indulged only in cases where the complaining party was not shown to have been guilty of contributory negligence, or was not shown to have known of the defective place where he worked. It is quite true that one has no right to assume a thing to exist which he knows does not. As, for instance, he has no right to assume that a street railway company had bells on its mules which were drawing an approaching car, when he knew they had not. Lynch v. St. Railway, 112 Mo. 420. The objectionable instruction in that case put the injured party's right to assume there were bells on the mules without regard to whether he, in exercise of ordinary care, might have known there were not. The instruction in that case, as written, left the injured party at reckless liberty to assume there were bells when the least attention on his

part would have disclosed there were not. In other words, the instruction was half complete. As said by the court in that case, it should have stated "that a person *himself in the exercise of ordinary care or prudence* has the right to assume that others will obey the law and to act on that belief" (p. 437). That is, the party, himself in exercise of ordinary care, may assume that the other party will perform, or has performed his duty.

In this case the instruction objected to was complete in itself. It states the law, for it embraces the respective positions of the contending parties. It is the law that plaintiff had the right to assume that defendant had performed its duty in furnishing a reasonably safe scaffold for him to walk upon unless its defect was so obviously dangerous as to deter an ordinarily prudent man from going upon it. If it was of the latter character, then plaintiff had no right to assume defendant had performed its duty, for he knew to the contrary. The testimony given by plaintiff was that he was a carpenter of long experience, that he was acquainted with lumber, its use, character and relative strength, as well as suitableness for different kinds of use. That he was not called upon to inspect the lumber in question, though he observed that some of the boards were old and were painted on one side and that some of them had nail holes in them. But it is clear from his testimony, indeed he stated in terms, that the boards being laid across the lattice-work or supports of from fourteen to twenty inches apart, were safe for him to walk upon. So, conceding that there was evidence tending to show the boards were so obviously dangerous that a prudent man would not have walked on them, yet it must also be conceded that the evidence also tended to show that the danger was not obvious. The instruction complained of submitted the comprehensive proposition that plaintiff had a right to assume

that defendant had furnished him a safe place to walk upon unless the danger was so obvious as to have prevented a prudent man, in which case no such assumption could be made. When a servant knows of a defect which is not glaringly dangerous, why may he yet continue to work? Plainly for the reason that he has a right to assume that it may be used with safety else the master would not have put it in place for his use. We regard the following cases as fully illustrating and supporting what we have said: Duerst v. St. Louis Stamping Co., 163 Mo. 607; Sullivan v. Railroad, 107 Mo. 78; Doyle v. Trust Co., 140 Mo. 19; Keegan v. Cavanaugh, 62 Mo. 230. In each of these, the servant knew of the defect, yet his right to assume safety is stated in various ways: as that, he "had a right to believe" in the Duerst case; that "he had a right to rely," in the Sullivan case; that "he had a right to presume," in the Doyle case.

The motion should be overruled. All concur.