JAMES M. ADAMS, Appellant, v. McCORMICK HARVESTING MACHINE COMPANY, Respondent.

95  111
95  313

### Kansas City Court of Appeals, June 2, 1902.

1. **Master and Servant: ASSUMPTION OF RISK.** A master is not responsible for injuries happening to the servant from the usual and ordinary risks incident to the employment.

2. ———: ———: **DEFECTIVE INSTRUMENTALITY.** A master is not responsible where the servant is required to perform the work with an instrument so glaringly and palpably dangerous that a man of common prudence would not use it, but he is responsible where the defect is not such as to threaten immediate injury, or the instrument may be safely used by the exercise of care.

3. ———: ———: ———: **SCIENTER.** Mere knowledge of defect in an instrumentality, and that risk is to be incurred in its use, will not as a matter of law defeat an action for injury by a servant.

4. ———: ———: ———: **TEST OF NEGLIGENCE.** The test of prudence is that which a prudent employee of the same class, using such prudence and judgment as such persons usually possess, might be reasonably expected to apply under the circumstances.

5. ———: ———: **NEGLIGENCE: JURY QUESTION.** The negligence of an employee in using a defective instrumentality does not arise from his knowledge of the defect, but it is a question for the jury under all the circumstances.

6. ———: ———: **FELLOW-SERVANT.** A master is not liable for injuries resulting from negligence of co-employees unless the master himself is in fault.

7. ———: ———: ———: A servant assumes all ordinary risks of the employment including the risk of negligence of his co-employee, though the master must use ordinary care not to employ incompetent servants.

8. ———: ———: ———: COMPLAINT. An employee who, after complaining of the incompetency of his fellow-servant without receiving assurance of a change, still remains in the employment, assumes the risk of such incompetent co-employee.

9. ———: ———: ———: JURY QUESTION. A servant does not assume the risk arising from the incompetency of his fellow-servant unless it is glaring and palpable; then he can not prudently remain in the employment, and whether he can so remain or not is a jury question.

10. ———: ———: ———: EVIDENCE. On the evidence in the record, the question whether an employee could prudently remain in the service, should have been sent to the jury.

11. ———: PRESUMPTION. A servant is presumed to have done his duty and followed the directions and orders of his superiors.

12. ———: CONTRIBUTORY NEGLIGENCE: EVIDENCE: JURY QUESTION. On the evidence in the record, the question of contributory negligence was for the jury.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

REVERSED AND REMANDED.

*John Burgin* and *Lawrence & Lawrence* for appellant.

(1) In passing upon a demurrer to evidence, or a request for a peremptory instruction in favor of the defendant, the court is required to make every inference of facts in favor of the plaintiff which a jury might have made in his favor. The court can make no inference of fact in favor of the defendant nor can the court question the truth of any of plaintiff's evidence. A demurrer admits the truth of everything which plaintiff's testimony conduces to prove, though in a small degree. Brink v. Railway, 17 Mo. App. 194; Herriman v. Railway, 27 Mo. App. 442; Buesching v. Gas Co., 73 Mo. 231; Monahan v. Coal Co., 58 Mo. App. 72. (2) Master and servant do not stand upon equal footing.

The master issues orders and the servant's province is obedience. Shortel v. St. Joe, 104 Mo. 119; Stephens v. Railroad, 96 Mo. 207; Huhn v. Railroad, 92 Mo. 441; Hughes v. Fagin, 46 Mo. App. 40. (3) A reckless disposition renders a co-servant incompetent and unfit. Incompetency exists not alone in physical and mental attributes but also in disposition. Malay v. Electric Light Co., 58 N. Y. S. 659; Consolidated Coal Co. v. Seniger, 79 Ill. App. 456. (4) Plaintiff's knowledge of Williams' incompetency does not debar his right of recovery. Mahaney v. Railroad, 108 Mo. 197.

*Gilmore & Brown* for respondent.

(1) Defendant was guilty of contributory negligence in that he voluntarily assumed a dangerous position when he knew, or by the exercise of ordinary care could have known, that the platform was liable to fall and injure him. Bolton v. Railroad, 83 Ga. 659. (2) Plaintiff was guilty of such neglect of duty as constitutes a bar to his recovery in that he did not supervise the work of storing the platform in question. Evans v. Railroad, 62 Mo. 49; Roblin v. Railroad, 119 Mo. 476. (3) Plaintiff assumed the risk of injury from the negligence of Williams by continuing to work with him for four or five years after he knew of the danger of so doing. Epperson v. Cable Co., 155 Mo. 346; Halloran v. Foundry Co., 133 Mo. 470; Steinhauser v. Spraul, 127 Mo. 541; Marshall v. Hay Press Co., 69 Mo. App. 256; Coontz v. Railroad, 115 Mo. 669; McMullen v. Railroad, 60 Mo. App. 239; Condon v. Railroad, 78 Mo. 567; McDermott v. Railroad, 87 Mo. 285; Watson v. Coal Co., 52 Mo. App. 366; Warmington v. Railroad, 46 Mo. App. 159; Limberg v. Glenwood L. Co., 60 Pac. 176. (4) The evidence shows that the injury was occasioned by the negligence of Imes rather than of Williams. There can therefore be no recovery. Searles

v. Railroad, 101 N. Y. 661; Breen v. Cooperage Co., 50 Mo. App. 215.

SMITH, P. J.—Action to recover damages for personal injuries. The defendant maintains a warehouse in Kansas City, wherein is stored its harvester and binder machines. For several years preceding the date of the injury complained of, the plaintiff had been employed by the defendant in and about its warehouse; and on that day he and two others, Williams and Imes, were engaged in transferring a carload of harvesters and binders into the second story of the defendant's warehouse, the machines having been taken apart so that they could be conveniently moved and stored away. When so separated said machines were divided into ten pieces or parts, one of which parts being the "platform" upon which the grain falls when cut by the sickle. This platform is constructed of iron, is about five feet wide by seven long, a few inches in thickness and weighs about 300 pounds. These platforms were stored in this manner: one was placed at a proper distance from the wall with the sickle-bar down and allowed to lean against the wall, each succeeding one being placed with the sickle-bar down and allowed to lean against the one preceding it. When placed in this position the back part of the platform was about six inches thicker at the top than the front of it (now the bottom) and for that reason it became necessary to place each sickle-bar about five or six inches from the preceding one in order to maintain the proper inclination to. hold the platforms securely in place. It required the services of but two men to so store the platforms, but when others were to be placed on the top of those so standing it required the efforts of three men to do the work.

Just before the happening of the injury on which this action is based, the plaintiff herein, together with Williams and Imes, had been engaged in storing the

platforms, the two latter passing them up to plaintiff who had been placing them on top of the row; and finally, when as many had been so placed as the plaintiff thought proper, he went downstairs leaving Williams and Imes to finish standing up a few that remained. After they had done this and started away from the platforms, Imes noticed that they had been placed with the sickle-bars too close together, so that the last one at the end of the row was standing in a perpendicular position instead of being properly inclined toward that back of it. Imes thereupon called Williams's attention to its position, asking him if it would not fall, to which Williams replied that it was just as he wanted it—to leave it alone. Thereupon they went below, where plaintiff awaited them, and loaded a truck with grain wheels which plaintiff and Imes took to the second floor on the elevator. Plaintiff pushed the truck from the elevator over to the row of frames, just beyond the platforms, and then ran the truck up to the side of the frames which brought it a little north of the platforms. He then stepped to the side of the truck placing himself directly in front of the platforms. He then stooped over to pick up a grain wheel when the platform, which Williams and Imes had placed in position while plaintiff was waiting for them below, fell, striking plaintiff and injuring him.

It was plaintiff's duty to assist in and supervise the work required to be done in the warehouse and to see that the goods were properly stored and that the men at work there did a full day's work, but he was not authorized to employ or discharge them. Williams had been regularly employed by the defendant in its repair department, but when not needed there he was required to assist plaintiff in doing work in the warehouse. The former was not much more than a boy, he being only some eighteen or nineteen years old and not possessed of the strength of the average man. Besides this, he was shown by the evidence to be careless, in-

competent and not strong enough to do the warehouse work. The plaintiff, more than two years before the happening of the injury, had on several occasions complained to his superiors in defendant's employment that Williams was too inexperienced, weak and careless to perform warehouse work, and that he (plaintiff) did not think him a safe man to work with in the warehouse, and that he was afraid of him. It does not appear that his superiors ever made plaintiff any promise or gave him any assurance that they would discontinue Williams's employment or that they would furnish a more competent man to take his place in doing the warehouse work. There was some evidence which tended to show that Williams had the reputation, amongst those acquainted with him, of being a careless, unsafe and dangerous man to work with.

There was a trial to a jury and at the conclusion of the plaintiff's evidence the court gave an instruction telling it that under the pleadings and evidence the plaintiff was not entitled to recover. Thereupon the plaintiff took a non-suit and after an unsuccessful motion to set the same aside he took his appeal here.

The demurrer, it appears, was sustained upon these grounds:

(1) That the plaintiff assumed the risk of injury from the incompetency, unfitness and carelessness of Williams by continuing to work with him after acquiring full knowledge of the danger to be incurred by doing so; and (2) that he was guilty of contributory negligence in taking a position in front of the platform where he knew, or by the exercise of ordinary care could have known, it was likely to fall, and in leaving Williams and Imes to place the remainder of the platforms without seeing, as was his duty, that it was properly done.

It is the well-settled law of this State that an employer is not responsible for injuries happening to his employee from the usual and ordinary risks incident to

the employment in which the latter is engaged, for in all such cases the contract is presumed to be made with reference to such risks.   Devitt v. Railroad, 50 Mo. 302; Doyle v. Trust Co., 140 Mo. 1.

And it is equally well settled that where the instrumentality with which the employee is required to perform the work is so glaringly and palpably dangerous that a man of common prudence would not use it, the employer can not be held responsible for the damages resulting therefrom.   But where the employee incurs the risk of the instrumentality which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonable to suppose or believe that it may be safely used by the exercise of care, a different rule prevails.   Conroy v. Iron Works, 62 Mo. 35.

And so it has been many times ruled that mere knowledge that an instrumentality is defective, and that risk is to be incurred in its use, is not, as a matter of law, sufficient to defeat the action by the employee if the danger is not such as to threaten injury, or if it be reasonable to suppose that it might be safely used by the exercise of care.   Stoddard v. Railway, 65 Mo. 514; Devlin v. Railway, 87 Mo. 545; Huhn v. Railway, 92 Mo. 440; Hamilton v. Mining Co., 108 Mo. 364; O'Mellia v. Railway, 115 Mo. 205; Holloran v. Union Iron & Foundry Co., 133 Mo. 470; Smith v. Little Pittsburg Coal Co., 75 Mo. App. 177.

The true rule, as near as it can be stated, is that an employee can recover for an injury suffered from defects due to the employer's fault, of which he had notice, if, under all the circumstances, an employee of ordinary prudence would, under similar circumstances, have continued the same work under the same risk. The test of prudence in those cases is that which a prudent employee of the same class, using such prudence and judgment as such persons usually possess but no more, might be reasonably expected to apply to the particular case.   Shearman & Red. on Negl. (5 Ed.),

secs. 211, 212; Hamilton v. Mining Co., 108 Mo. loc. cit. 376.

Mere knowledge of the defect will not defeat a recovery. Negligence on the part of the employee in such case does not necessarily arise from his knowledge of the defect, but it is a question of fact to be determined by the jury from such knowledge and other circumstances in evidence. Smith v. Coal Co., ante; Bradley v. Railway, 138 Mo. 305; Doyle v. Trust Co., ante; Huhn v. Railway, ante; Mahaney v. Railway, 108 Mo. 191; Soeder v. Railway, 100 Mo. 673; Stephens v. Railway, 96 Mo. 207; Devlin v. Railway, ante.

The responsibility of an employer to each of his employees for competency and fitness of the others in his employ engaged in the same common employment, is quite analogous to that in regard to machinery. Beach on Contributory Negl. sec. 353. And accordingly it has been held that an employer is not responsible to those engaged in his employment for injuries suffered by them as the result of the negligence of co-employees engaged in the same common employment, unless the employer himself was in fault. Gilson v. Railway, 46 Mo. 163; Gormly v. Vulcan Iron Works, 61 Mo. 492; Smith v. Railway, 69 Mo. 32; Cummings v. Collins, 61 Mo. 520; Current v. Railway, 86 Mo. 62; Moran v. Brown, 27 Mo. App. 487; Warmington v. Railway, 46 Mo. App. 159.

And as said in the last-cited case, the principle is that an employee, when he engages to serve an employer, undertakes as between himself and his employer to run all the ordinary risks of the employment, and this includes the risk of negligence on the part of a co-employee of him who is the common employer of both. The employer must take ordinary care and reasonable precautions not to employ reckless, dissipated or incompetent employees for positions where their fault may injure their co-employees, and if he fail to do this he is liable in case of injury. If an employee dis-

covers that a co-employee is careless, incompetent or dissipated, and continues in the employment of his employer without protest or complaint, he is deemed to have assumed the risk of the danger and to waive any claim upon the employer for damages in case of an injury.    Beach on Contrib. Negl. sec. 140; Woods on Master & Ser. sec. 422; Warmington v. Railway, ante; Devitt v. Railway, 50 Mo. 302; Dale v. Railway, 63 Mo. 455; Current v. Railway, ante.

And when an employee complains or protests to the employer that a co-employee is careless, incompetent or dissipated, and the employer gives no intimation or assurance that he will make a change, it is at his option to remain in the employment or leave it, and if he remains without promise of change or other like inducement, it is then for the jury to say whether or not he voluntarily assumed the risk of incompetent co-employees whereof he has full and equal knowledge. Laning v. Railway, 49 N. Y. 521.

And the rule is now firmly embedded in our jurisprudence, to the effect that an employee is not as a matter of law deemed to have accepted the risks of injury from the incompetency or unfitness of a co-employee unless such incompetency or unfitness is so glaring and palpable that a prudent man would not remain in the employment, and that whether the employee does accept the risks by remaining in the employment, or whether or not the employee under the circumstances could reasonably suppose that by the use of great care he could remain in the employment with safety, are questions for the jury.    Smith v. Coal Co. supra; Adams v. Coal Co., 85 Mo. App. 486; Hughes v. Fagin, 46 Mo. App. 37; Hamman v. Coal Co., 156 Mo. 232; Conroy v. Iron Works, 62 Mo. 35; Stoddard v. Railway, 65 Mo. 514; Devlin v. Railway, ante; Huhn v. Railway, 92 Mo. 441; Soeder v. Railway, ante; Hamilton v. Mining Co., 108 Mo. 369; Williams v. Railway, 109 Mo.

486; O'Mellia v. Railway, 115 Mo. 205; Doyle v. Trust Co., 140 Mo. 1.

When the plaintiff lodged his complaint with his superiors, stating that Williams was unfit and incompetent to perform the work required in the warehouse, whether or not under the circumstances he reasonably supposed that he could, by the exercise of care, continue in such employment with safety, was a question for the jury to decide. According to the rules to which we have just alluded it would seem that upon the issue as to whether or not the plaintiff assumed the risk of continuing in the employment of the defendant, after he was apprised of the fact that Williams, his co-employee, was incompetent and unfit to perform the warehouse work required, was a question for the jury and not for the court to decide.

Nor do we think the second ground of the demurrer, namely, that of contributory negligence, should have been sustained. Plaintiff, on the day he was injured, had placed most of the platforms in a row, giving each the proper inclination so that they would not fall. In this work Williams and Imes assisted. Just before they had quite placed all the platforms previously transferred from a railroad car to the floor of the warehouse, the plaintiff, having occasion to go downstairs, directed Williams and Imes to place those remaining in the row. They had been taught by example, if not by word, how to properly place these platforms in the row, and when they joined plaintiff below stairs and reported, as they no doubt did, that they had finished the work, the plaintiff had the right to suppose that they had placed the remaining platforms in the row in the same way that the others had been placed by him with their assistance.

The ordinary presumption is that an employee has done his duty or has followed the directions and orders of his superior, etc. State v. Bank, 120 Mo. 161; Lenox v. Harrison, 88 Mo. 491. So that when the plaintiff

returned to the second story of the warehouse with the truck-load of grain wheels and pushed it in front of the row of platforms, it was not required of him to stop and look at the latter to see whether Williams and Imes had properly placed therein the remainder of the platforms before he proceeded to unload the truck. It is probable that a casual glance at the row of platforms would not have disclosed the fact that such of them as had been placed therein by Williams and Imes had been placed in a vertical position for the reason that the light there was bad on account of the closing of the windows at that end of the room by a partition wall, and a close scrutiny would have been required to have discovered that the platforms had been improperly placed.

So that we can not think that the court, under the circumstances, was justified in saying, as a matter of law, that the plaintiff knew or by the exercise of ordinary care could have known that the platform which fell and injured plaintiff was likely to fall and that he was therefore guilty of contributory negligence. This was a question for the jury. Nor do we think that, though the plaintiff's duty was to supervise the work in the warehouse, he was required to stand over Williams and Imes and see that they placed the remainder of the platforms just as he had with their assistance placed the others in the same row. And where work which he had shown them how to do and to be done by them in his absence, was carelessly done, it would be most unreasonable to require him to inspect it before proceeding himself to work near it. We can not think that his failure to inspect such work in order to ascertain whether or not the same had been properly and safely done before approaching near it himself to work, would, in case he was injured thereby, be such contributory negligence as would preclude a recovery. Whether or not he was guilty of contributory negligence in failing to supervise the placing of the platforms was, under the circumstances, for the jury to determine.

We discover nothing in the evidence to support the contention that the plaintiff's injury was occasioned by the negligence of Imes rather than that of Williams.

In any view of the case that we have been able to take, we must think it was one for the jury, and that the court erred in sustaining the defendant's demurrer. The judgment will be reversed and cause remanded. All concur.